Filed 9/10/15

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE


| | |
|---|---|
| PASADENA POLICE OFFICERS ASSOCIATION et al., <br><br> Petitioners, <br><br> v. <br><br> SUPERIOR COURT OF LOS ANGELES COUNTY, <br><br> Respondent; <br><br> CITY OF PASADENA et al., <br><br> Real Parties in Interest. | B260332 <br> (Los Angeles County <br> Super. Ct. No. BC556464) |


ORIGINAL PROCEEDINGS in mandate. James C. Chalfant, Judge. Petition denied with directions.

Green & Shinee and Richard A. Shinee for Petitioners Pasadena Police Officers Association and Officers Matthew Griffin and Jeffrey Newlen.

No appearance for Respondent.

Michele Beal Bagneris, City Attorney, and Javan N. Rad, Chief Assistant City Attorney, for Real Party in Interest City of Pasadena.

Gronemeier & Associates, Dale L. Gronemeier and Elbie J. Hickambottom, Jr., for Real Parties in Interest Anya Slaughter, Pasadena Chapter of the National Association for

the Advancement of Colored People, Interdenominational Ministerial Alliance of Greater Pasadena, ACT and Kristin Ockershauser.

Davis Wright Tremaine, Kelli L. Sager, Rochelle L. Wilcox, Jonathan L. Segal; Los Angeles Times Communications, Jeff Glasser; Jassy Vick Carolan, Jean-Paul Jassy and Kevin L. Vick for Real Party in Interest Los Angeles Times Communications.

_____

In the wake of a March 2012 shooting death of unarmed teenager Kendrec McDade (McDade) by two members of the Pasadena Police Department (PPD), real party in interest, City of Pasadena (City), retained an independent consultant, the Office of Independent Review Group (OIR), to review departmental policies. After OIR completed its review, real parties in interest and interveners the Los Angeles Times (Times), and real parties in interest and interveners, Anya Slaughter, Kris Ockershauser, the Pasadena Branch of the National Association for the Advancement of Colored People, ACT, the Interdenominational Ministerial Alliance of the Greater Pasadena (collectively, the Slaughter parties or, when mentioned in conjunction with the Times, Interveners), made requests under the California Public Records Act (Gov. Code,[1] § 6250 et seq.; Cal. Const., art. I, § 3, subd. (b)) (PRA or the Act) seeking disclosure of the OIR's August 2014 "Report to the City of Pasadena Concerning the Officer-Involved Shooting of . . . McDade" (Report).

Petitioners the Pasadena Police Officers Association (PPOA) and Pasadena Police Officers Matthew Griffin and Jeffrey Newlen (the officers or, in conjunction with the PPOA, collectively, petitioners) initiated this reverse PRA action, seeking to enjoin disclosure of the Report. After initially issuing a temporary restraining order, the trial court eventually permitted the Times and Slaughter parties to intervene, denied the injunction, and ordered the Report publically released. However, the trial court found

---

[1] All further statutory references are to the Government Code unless otherwise indicated.

2

certain portions of the Report constituted confidential peace officer personnel records, exempt from disclosure pursuant to section 6254, subdivision (k), and ordered those portions redacted. The court stayed the effect of its judgment to permit parties to seek extraordinary writ relief. (§ 6259, subd. (c).)

We deny the petition by which PPOA and the officers seek to preclude disclosure of the entire Report or, in the alternative, the production of a more heavily redacted Report. The trial court correctly concluded that the Report itself is a public document. The court also correctly determined that portions of the Report contain confidential personnel information exempt from disclosure under the PRA. The trial court's redactions, however, went too far. Our review of the sealed materials in the record reveals that some of the material the court ordered redacted from the Report is unrelated to personnel files of individual officers. The inappropriately redacted material includes analyses of the PPD's administrative investigation and departmental policies, descriptions of the PPD's responsiveness (or the absence thereof), and recommendations by the OIR, none of which is privileged under the PRA.[2] Accordingly, we deny the petition and remand the matter to the superior court with directions to conduct new proceedings, and issue a new or modified judgment ordering appropriate redactions to the Report in accordance with this opinion.

### FACTUAL AND PROCEDURAL BACKGROUND

On March 24, 2012, just after 11:00 p.m., the officers responded to a 911 call. The caller claimed to have been robbed at gunpoint by two men. Much later, the caller admitted he had falsely reported that the robbers were armed.

Responding to the dispatch broadcast, the officers proceeded in their squad car to the area of the alleged crime. As they approached the intersection, McDade, a 19-year-

---

[2] As discussed in section 6 below, the material we deem inappropriately redacted was filed under seal. It is contained in appendix A to this opinion, also filed under seal and not referred to in the published portion of this opinion. Appendix A will remain sealed until the superior court issues a new judgment (see below).

old African-American male, began running. The officers pursued McDade about two blocks. Officer Griffin fired four shots at McDade from inside the patrol car. Officer Newlen, having previously exited the squad car to give chase, fired four more shots, killing McDade. It was later discovered that McDade was not armed.

The shooting spawned multiple investigations, a citizen's complaint (filed on March 25, 2012), and a federal lawsuit by McDade's mother, Anya Slaughter, against the officers and the City. The Los Angeles District Attorney conducted a criminal investigation which concluded with a finding that, due to the false report, the officers reasonably had believed McDade was armed. No criminal charges were filed against the officers. The Federal Bureau of Investigation conducted a civil rights investigation of the shooting, which ultimately was closed without the filing of criminal charges or a civil complaint. Slaughter's federal action against the City and the officers was settled.

The PPD conducted its own investigations. Two were conducted immediately after the McDade shooting. The purpose of the first investigation, undertaken by the PPD's Criminal Investigations Division (CID), was to determine whether the officers committed a crime. Different PPD investigators conducted a separate Internal Affairs (IA) investigation. The PPD investigated the March 25, 2012 citizen complaint in the course of its CID and IA investigations. In March 2013, the PPD conducted a third investigation: an administrative review based on evidence collected during the CID and IA investigations. That administrative review concluded with a determination that the officers acted within departmental policy because they reasonably had believed McDade was armed and assaulting an officer, and shot him in self-defense and in defense of one another.

The officers were interrogated and gave voluntary statements to investigators in the course of the CID investigation. Those statements were considered as part of the district attorney's analysis in determining whether to file criminal charges. The officers were deposed in Slaughter's federal civil rights action against them. At their depositions the officers were questioned about the shooting and the subsequent investigations, and

4

each used the statement he had given during the CID investigation to refresh his recollection.[3] The officers did not provide additional statements in connection with either the IA investigation or the PPD's administrative review.

On an unspecified date soon after the shooting in March 2012 the City retained OIR as a private consultant to conduct an independent review of the McDade shooting. According to the declaration submitted in this action by PPD Deputy Chief Darryl Qualls, "[t]he purpose of the OIR Group's review, memorialized in the OIR Report, was to serve as a review of the incident for the benefit of the department and to evaluate how the [PPD] does business in the areas reviewed." Deputy Chief Qualls also declared that the PPD would not use OIR's Report "to (1) affect the officers' advancement; (2) conduct an appraisal of the officers; or (3) consider discipline of the officers." After reviewing the Report and other evidence, the trial court found the City retained OIR in order to evaluate the thoroughness and objectivity of the PPD's investigations of the McDade shooting, the adequacy of officer training, what lessons had been learned from the incident and, based on OIR's review and conclusions, to recommend institutional reforms.

OIR's 70-page Report was completed in August 2014. Interveners submitted requests to the City for the Report on the McDade shooting, pursuant to the PRA. On September 3, 2014, while the PRA requests remained pending, PPOA and the officers initiated the underlying reverse PRA action, and sought and obtained a temporary restraining order (TRO) preventing release of the Report. On September 9, 2014, the trial court vacated the TRO on the ground the matter was not yet ripe, and ordered the City to respond to the Interveners' PRA requests and to give petitioners notice if it intended to disclose the Report. Interveners submitted new or renewed PRA requests for the Report to the City on September 9, 2014.

---

[3] Transcripts of the officers' depositions have been publicly available since January 2014. Their statements from the CID investigation were not attached as exhibits to those transcripts.

5

On September 11, 2014, the City announced that unless the court directed otherwise, it planned to release a redacted copy of the Report the following week. The City stated it intended to redact portions of the Report containing confidential police officer personnel records.[4]

On September 16, 2014, petitioners filed an ex parte application seeking to enjoin the City from releasing any portion of the Report. The same day, the Times and others filed motions seeking to intervene in this action and writ petitions seeking to compel release of the Report without redactions. The trial court granted leave to intervene.

On October 16, 2014, after extensive briefing and oral argument, the trial court issued a 16-page "Decision on Application for Injunctive Relief-Partly Granted." The court acknowledged the parties' competing positions regarding disclosure of the Report: Consistent with their positions here, Interveners argued the Report is a public record and should be disclosed in its entirety. Petitioners asserted that the Report is a confidential personnel record entirely exempt from disclosure under the *Pitchess*[5] statutes (Pen. Code, §§ 832.5, 832.7, 832.8) and the privilege exemption of the PRA (Gov. Code, § 6254, subd. (k).) The City argued that all but about 20 percent of the Report (which it agreed was confidential personnel information) should be disclosed.

The trial court found the Report was indisputably a "public record," in which the "public's interest in disclosure . . . is 'particularly great' because it relates to 'officer involved shootings' and governmental policies regarding law enforcement and public safety." The court also found that specific portions of the Report constituted confidential personnel records, exempt from disclosure under section 6254, subdivision (k).

Before the trial court, Interveners argued the officers had waived any arguable privilege or exemption from disclosure of the Report by placing much of the information

---

[4] The City chose to waive its right to assert an additional PRA exemption from disclosure for law enforcement investigatory files. (§ 6254, subd. (f).)

[5] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

they sought to suppress in the public domain in the course of Slaughter's federal court action, during which portions of the officers' deposition transcripts had been filed in connection with a summary judgment motion. No protective order was sought and those transcripts were not filed under seal. At his deposition, each officer had testified about the circumstances surrounding the McDade shooting, including his own actions, tactics and concerns. The officers also used the statements they made to detectives during the CID investigation to refresh their recollections. The court rejected Interveners' assertion of waiver. It concluded that, although "the Officers may have waived any confidentiality associated with the information or communications in the public domain," information contained in or derived from their personnel files retained its confidential status regardless of whether it was also available elsewhere in an unprotected document.

Interveners also argued that the officers and the City waived confidentiality and privilege exemptions once the City disclosed the Report to petitioners. In other words, having disclosed the Report to members of the public (i.e., the officers), the City was required to make the Report available for public inspection. The court also rejected this contention. It observed that police officers have a statutory right to inspect their personnel files. (§ 3306.5.) The privilege of confidentiality in officers' personnel records belongs to the officers as well as to the City. The officers had a right to review the Report in order to determine whether to assert confidentiality as to some or all of it.

In conclusion, the trial court found that those portions of the Report that "'recite[] or rel[y] upon the administrative investigation'" are exempt from disclosure under the *Pitchess* statutes. It found the administrative and criminal investigations were clearly separate investigations. The latter investigation did not constitute a personnel record and did "not reveal any information about the 'advancement, appraisal, or discipline' of a particular officer. See Penal Code [section] 832.8[, subdivision] (d)." (Italics omitted.) However, an administrative investigation that "results in a disciplinary recommendation to the Chief of Police, and the administrative process [are] protected by the *Pitchess* statutes." The court concluded that those portions of the Report containing privileged

7

personnel information generated in connection with the PPD's internal administrative investigation qualified for protection and must be redacted.

On November 13, 2014, after reviewing the City's and petitioners' proposed redactions to the Report, the trial court entered judgment and ordered release of the redacted Report. The trial court vacated its September 16, 2014 TRO, but stayed the effect of its vacation order and judgment for 20 days to permit the parties to seek review of the judgment.

On November 26, 2014, petitioners filed the instant petition for writ of mandate with this court, seeking review of the trial court's disclosure order. No other party filed a petition. We stayed the trial court's order pending our decision, and requested briefing. (§ 6259, subd. (c).)

*Subsequent events at the Court of Appeal*

*1.* *Petitioners' publicly filed reply brief containing redacted material is sealed, then reinstated*

On March 16, 2015, petitioners filed a "Reply to Preliminary Opposition to [the Times'] Petition for Writ of Mandate and Opposition to Petition for Writ of Mandate" (Reply brief).[6] On March 25, 2015, petitioners notified this court that the Reply brief filed on March 16 "inadvertently, and mistakenly, included verbatim excerpts of the OIR[] Report," which are the subject of this proceeding and among the materials petitioners maintain are confidential peace officer personnel records. Petitioners asked this court to seal their March 16, 2015 Reply brief, requested permission to substitute an accompanying redacted reply brief (omitting the Report's excerpts) in the public record, and requested an order requiring the parties to return the March 16 Reply brief. On March 25, 2015, we granted petitioners' request.

---

[6] The Reply brief also responded to the City's January 5, 2015, opposition to the petition for writ of mandate.

8

Interveners reacted immediately, requesting that we vacate our March 25 order. They argued that, in the guise of a perfunctory administrative request to remedy a filing mistake, petitioners' March 25 motion actually sought an unconstitutional prior restraint on speech and sealing order.[7] Interveners noted that they and numerous third parties lawfully received the unredacted Reply brief (which was publicly available for nine days before the motion to seal was filed). Accordingly, they argued that any order punishing or preventing dissemination of information in the March 16 Reply brief was a presumptively unconstitutional First Amendment violation, as to which petitioners could not satisfy the stringent burden necessary to justify retroactive secreting of the Reply brief. On March 27, 2015, Interveners notified this court of their discovery (after filing their March 26 opposition to the motion to seal) that much of the information from petitioners' publically available Reply brief had been disseminated in an article published on March 25, 2015 by the Pasadena Star News, a nonparty media group.

In response, petitioners argued they were not required to provide advance notice or an opportunity to respond in connection with their motion to seal, that this court's March 25 order was not an unconstitutional prior restraint, and that Interveners had unlawfully released the sealed reply brief after we issued our March 25 order.[8]

On April 1, 2015, this court notified the parties that it was considering vacating its March 25, 2015 order sealing petitioners' March 16 Reply brief, and gave the parties an

---

[7] Interveners also claimed they were deprived of notice of and an opportunity to be heard as to the motion to seal. The record indicates that petitioners served the motion to seal on all parties on March 24, 2015. But Interveners argued that petitioners effected service by mail in a "transparent"—and successful—attempt to ensure Interveners would not learn of the motion until after this court issued an order.

[8] In a declaration by Michelle White (who is neither a party to this action herself, nor affiliated with any party), filed on March 30, 2015, Interveners denied that the Times supplied the unredacted Reply brief to the Star News, or supplied the information to any media group after we issued the March 25, 2015 order. White declared that she received the unredacted Reply brief on March 19 from counsel for the Slaughter parties, and provided information from that brief to nonparty media outlets before March 25, 2015.

9

opportunity to respond. They did so and, on April 17, 2015, we vacated our March 25 order, and unsealed and reinstated petitioners' March 16, 2015 Reply brief in its entirety.

### 2. *The Slaughter parties move to dismiss this proceeding*

On April 20, 2015, the Slaughter parties filed a motion to dismiss writ proceeding and to remand to trial court with instructions (motion to dismiss). They argued that because petitioners' counsel publically filed the Reply brief containing a significant portion of the material petitioners seek here to suppress without contemporaneously asserting privilege on behalf of the officers, petitioners waived any privilege that may have attached with respect to the Report. In short, they asserted that this writ proceeding had been rendered moot. The Slaughter parties also argued that, in addition to dismissing the petition, this court should remand the matter with instructions to the trial court to issue an order to show cause to determine whether the entire unredacted Report should be released to Interveners.

Petitioners and the City each opposed the motion to dismiss. The City took no position with respect to a straightforward dismissal of this action. However, because the Slaughter parties chose not to file a writ petition seeking affirmative relief pursuant to section 6259, subdivision (c),[9] both the City and petitioners opposed the motion to the extent the Slaughter parties requested that dismissal be accompanied by an order directing the trial court to conduct additional proceedings.[10] Petitioners also argued that the motion to dismiss must be denied because there was no basis for this court to conclude the matter was moot.[11]

---

[9] See *MinCal Consumer Law Group v. Carlsbad Police Dept*. (2013) 214 Cal.App.4th 259, 263–264 [section 6259, subdivision (c) is the "sole and exclusive means to challenge" PRA ruling].

[10] We grant petitioners' request to consider their untimely opposition to the Slaughter parties' motion to dismiss.

[11] For reasons discussed in sections 5 and 6 below, we conclude the matter is not moot, and deny the motion to dismiss.

## 3. *The court invites briefing*

As noted above, no Intervener filed a petition seeking issuance of an extraordinary writ following the trial court's November 13, 2014 judgment. Nevertheless, collectively, Interveners seek affirmative relief in this action. They urge this court to find that, under the guise of protecting statutorily privileged personnel information, the trial court's ruling erroneously shields from disclosure information which must be publically released, specifically criticisms in the Report of the PPD's administrative review. On April 22, 2015, we invited the parties to submit letter briefs addressing the issue of "[w]hat, if any, authority . . . this Court [has] to consider/grant relief sought by Interveners?" The parties responded, submitting initial and responsive letter briefs.

## DISCUSSION

Petitioners maintain the trial court's order must be reversed. They contend that the entire Report is privileged because it "is, in effect, a personnel file, or at the very least, substantial parts of the [Report] which the Court below refused to redact are clearly personnel material in nature and *type*," as described in Penal Code sections 832.5 and 832.6, and Evidence Code sections 1043 and 1045.

The Slaughter parties argue that the public has a strong interest in the Report's criticisms of the PPD's handling and administrative investigation of the McDade incident, particularly as to lessons it contains to prevent similar incidents. They also maintain that, to the extent the order redacting certain material in the Report is legally defensible, the court was overly protective of the officers' privacy and improperly treated publicly available material (the officers' testimony in the federal court action) and criticisms of the PPD's administrative investigation as confidential personnel information. The Slaughter parties also contend that petitioners waived their right to assert privilege by virtue of petitioners' counsel's disclosure of excerpts of the Report in the March 16 Reply brief filed in this proceeding.

The City contends the trial court got it right, and the petition must be denied.

11

The Times insists that the petition be denied and the Report disclosed in its entirety. They assert that the *Pitchess* statutes protect only enumerated categories of confidential material not at issue here, and that petitioners' asserted secrecy interests do not clearly outweigh the significant public interest in full disclosure. The Times also argues that, because information used by OIR to prepare its Report was voluntarily and publicly disclosed, any right the City or officers may have had to assert confidentiality as to that information was waived.

We conclude that, in large measure, the trial court's well-reasoned decision is correct. The Report is a public document that contains some privileged personnel information statutorily exempt from disclosure, and no privileges have been waived. However, we also find that the trial court's redactions go too far to the extent they prevent disclosure of OIR analyses of the PPD's administrative review and investigation, which are not criticisms or appraisals directed at officer conduct.

1. *The PRA*

The Legislature enacted the PRA in 1968 to clarify the scope of the public's right to inspect records. (*County of Los Angeles v. Superior Court* (2000) 82 Cal.App.4th 819, 825.) The PRA was intended to increase freedom of information by giving members of the public access to information in the possession of public agencies. (*Long Beach Police Officers Assn. v. City of Long Beach* (2014) 59 Cal.4th 59, 66–67 (*LBPOA*); *Los Angeles Unified School District v. Superior Court* (2014) 228 Cal.App.4th 222, 237 (*LAUSD*); § 6253, subd. (a).) The Act is premised on the principle that "access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in the state." (§ 6250; *CBS, Inc. v. Block* (1986) 42 Cal.3d 646, 651, fn. 5.) In furtherance of this goal, the Supreme Court has declared that "[m]aximum disclosure of the conduct of governmental operations" is necessary. (*CBS, Inc. v. Block*, at pp. 651–652.) As the result of a voter initiative passed in 2004, the PRA's principles are now enshrined in the state Constitution: "The people have the right of access to information concerning the conduct of the people's business, and,

therefore, . . . the writings of public . . . agencies shall be open to public scrutiny."**12** (Cal. Const., art. I, § 3, subd. (b)(1); *International Federation of Professional & Technical Engineers, Local 21, AFL–CIO v. Superior Court* (2007) 42 Cal.4th 319, 329.) The PRA embodies a strong policy in favor of access and must be construed broadly. (Cal. Const., art. I, § 3, subd. (b)(2); *County of Los Angeles v. Superior Court* (2012) 211 Cal.App.4th 57, 63 (*County of Los Angeles*).)

Public policy favors disclosure and, generally speaking, a public record is subject to disclosure unless the PRA provides otherwise. (*County of Santa Clara v. Superior Court* (2009) 170 Cal.App.4th 1301, 1320; see *Williams v. Superior Court* (1993) 5 Cal.4th 337, 346 ["all public records are subject to disclosure unless the Legislature has expressly provided to the contrary"].) The California Supreme Court has found this policy especially salient when the subject is law enforcement: "'In order to maintain trust in its police department, the public must be kept fully informed of the activities of its peace officers.'" (*Commission on Peace Officer Standards & Training v. Superior Court* (2007) 42 Cal.4th 278, 297 (*CPOST*); see *LBPOA, supra*, 59 Cal.4th at p. 74.) Given the extraordinary authority with which they are entrusted, the need for transparency, accountability and public access to information is particularly acute when the information sought involves the conduct of police officers. In *CPOST*, the Supreme Court observed, "The public's legitimate interest in the identity and activities of police officers is even greater than its interest in those of the average public servant. 'Law enforcement officers carry upon their shoulders the cloak of authority to enforce the laws of the state. In order to maintain trust in its police department, the public must be kept fully informed of the activities of its peace officers.' [Citation.] 'It is indisputable that law enforcement is a primary function of local government and that the public has a far greater interest in the qualifications and conduct of law enforcement officers, even at, and perhaps especially at, an "on the street" level than in the qualifications and conduct of other comparably

---

**12** The Report was written for and on behalf of the City, a public agency.

13

low-ranking government employees performing more proprietary functions. The abuse of a patrolman's office can have great potential for social harm . . . .'" (*CPOST*, at pp. 297–298; see *LBPOA*, at p. 74 [observing that the public's interest in and need for access to information regarding law enforcement is particularly acute in the context of police officers' use of deadly force].)

2.    *The standard of review*

The trial court's construction and "interpretation of the PRA and its application to undisputed facts present questions of law subject to de novo . . . review." *CBS Broadcasting Inc. v. Superior Court* (2001) 91 Cal.App.4th 892, 906; *County of Los Angeles*, *supra*, 211 Cal.App.4th at p. 62.) We apply the substantial evidence test to the court's express or implied factual determinations. (*County of Los Angeles*, at p. 62; *Michaelis, Montanari & Johnson v. Superior Court* (2006) 38 Cal.4th 1065, 1072.)

3.    *The PRA favors public disclosure except where privacy rights outweigh the public's interest in disclosure*

a.    *Exceptions to disclosure*

The right to obtain public records is not absolute. (*Copley Press, Inc. v. Superior Court* (2006) 39 Cal.4th 1272, 1282 (*Copley Press*).) Under the PRA the public has a right to inspect public records unless an exception applies. (§ 6253, subds. (a), (b).) In adopting the PRA, the Legislature remained "mindful of the right of individuals to privacy" (§ 6250), and enumerated several exceptions to disclosure designed to protect individual privacy rights that outweigh the public's interest in disclosure. (§ 6254; see *LAUSD*, *supra*, 228 Cal.App.4th at pp. 238–239.) The California Constitution acknowledges that police officers are entitled to certain privacy protections. Article I, section 3, subdivision (b)(3) provides that nothing in that subdivision "'supersedes or modifies the right of privacy guaranteed by [article 1,] Section 1 or affects the construction of any statute . . . to the extent that it protects that right to privacy, including any statutory procedures governing discovery or disclosure of information concerning the official performance or professional qualifications of a peace officer.'" (*CPOST*, *supra*,

14

42 Cal.4th at p. 288.) The Constitution thus "excludes from the requirement of narrow construction those statutes . . . protect[ing] the privacy interests of peace officers, including [the PRA] and the *Pitchess* statutes . . . at issue here. (*LBPOA*, *supra*, 59 Cal.4th at p. 68; see *County of Los Angeles*, *supra*, 211 Cal.App.4th at p. 60; Cal. Const., art. I, § 3, subd. (b)(2).) A party opposing disclosure must show the requested information falls within the parameters of a specific exemption. (*LBPOA*, at p. 67; *CPOST*, at p. 299; *County of Los Angeles*, at p. 63; § 6255, subd. (a) ["The agency shall justify withholding any record by demonstrating that the record in question is exempt under express provisions of this chapter"].)

We are concerned here with one exception to the PRA. That exception protects from disclosure "[r]ecords, the disclosure of which is exempted or prohibited pursuant to federal or state law, including, but not limited to, provisions of the Evidence Code relating to privilege." (§ 6254, subd. (k).) This provision incorporates the *Pitchess* protections that render personnel records of peace officers confidential. (Pen. Code, § 832.7, subd. (a); *City of Richmond v. Superior Court* (1995) 32 Cal.App.4th 1430, 1440.)

> b. *Pitchess protections*

The law governing protection for the privacy of police officers in California is found in a series of statutes commonly referred to as "*Pitchess* statutes," specifically Penal Code sections 832.7 and 832.8 and Evidence Code sections 1043 and 1045. (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1019.) In enacting the *Pitchess* statutes, the Legislature made policy choices, deciding which information should be public and which information should be exempt from disclosure, and "drew the line carefully, with due concern for the competing interests." (*CPOST*, *supra*, 42 Cal.4th at p. 298.) The *Pitchess* statutes provide for two categories of confidential records: (1) "personnel records," and (2) records of citizen complaints about individual officers, and reports or findings relating to investigation of such complaints. (*LBPOA*, *supra*, 59 Cal.4th at pp. 68–69; Pen. Code, § 832.7, subd. (a).)

15

As employed in the *Pitches*s statutes, the term "personnel records" refers to any file maintained under an individual's name by his or her employing agency and containing records related to "[e]mployee advancement, appraisal, or discipline," "[c]omplaints, or investigations of complaints, concerning an event or transaction in which he or she participated, or which he or she perceived, and pertaining to the manner in which he or she performed his or her duties," and "[a]ny other information the disclosure of which would constitute an unwarranted invasion of personal privacy." (Pen. Code, § 832.8, subds. (d)–(f).)  The disclosure of peace officer personnel records is limited by Penal Code section 832.7, which provides that such records (or information obtained from such records), are confidential and may be disclosed in litigation only under specified procedures on a showing of good cause.  (See Evid. Code, §§ 1043, 1045.)

Also protected as confidential are an ageny's investigations of citizen complaints. "Under the *Pitchess* statutes, a public entity that employs peace officers must investigate and retain citizen complaints of officer misconduct, such as the use of excessive force. (Pen. Code, § 832.5.)  Litigants, upon a showing of good cause, are given limited access to records of such complaints and investigations (Evid. Code, §§ 1043, 1045), but such records are otherwise 'confidential' and may 'not be disclosed' (Pen. Code, §§ 832.7, subd. (a), 832.8, subd. (e))." (*LBPOA*, *supra*, 59 Cal.4th at p. 68.)  The *Pitchess* statutes require police departments to "establish a procedure to investigate complaints by members of the public against the personnel of these departments . . . ."  (Pen. Code, § 832.5, subd. (a)(1).)  But Penal Code section 832.8, subdivision (e) protects "[c]omplaints, or investigations of complaints, concerning an event or transaction in which [an officer] participated . . . and pertaining to the manner in which he or she performed his or her duties."

    *c.*     *Decisional authority*

Three recent California Supreme Court cases—*Copley Press*, *supra*, 39 Cal.4th 1272, *CPOST*, *supra*, 42 Cal.4th 278 *and LBPOA*, *supra*, 59 Cal.4th 59—discuss the

16

interplay between *Pitchess* protections and the PRA, and establish the framework for our discussion.

At issue in *Copley Press*, *supra*, 39 Cal.4th 1272, was whether a news agency was entitled to records of a civil service commission regarding a deputy sheriff's administrative appeal of his termination for disciplinary reasons. The appellate court ordered the records disclosed, reasoning that Penal Code section 832.7's confidentiality provision for "personnel records" applied only to files maintained by the employing agency, not information developed from other sources, even if that independently developed information duplicated information in the personnel file. (*Id*. at pp. 1280–1281.) Because the civil service commission was not the deputy's employing agency, the court of appeal found its records did not qualify as "'personnel records'" protected by the *Pitchess* statutes. (*Copley Press*, at pp. 1280–1281, 1286–1287.)

The Supreme Court rejected this interpretation, concluding that officers' disciplinary records are privileged even where those records are generated by an outside agency. The court found the civil service commission records of the deputy's appeal constituted confidential "'personnel records,'" exempt from disclosure under the *Pitchess* statutes. (*Copley Press*, *supra*, 39 Cal.4th at pp. 1286–1296.) There is nothing in the language or legislative history of the *Pitchess* statutes to suggest that a police officer's privacy rights are entitled to less protection because his or her employer uses an outside agency to conduct administrative appeals. (*Copley Press*, at p. 1295.) *Copley Press* also rejected the appellate court's conclusion that disclosure of the identity of the appealing deputy was required, noting the *Pitchess* statutes were "designed to protect, among other things, 'the identity of officers' subject to [citizen] complaints." (*Copley Press*, at p. 1297, citing Pen. Code, § 832.7, subds. (a), (c).) Penal Code section 832.7 deems an officer's personnel records and information obtained from those records "confidential." Accordingly, they are exempt from disclosure under the PRA. (*Id*. at pp. 1284–1286.)

In *CPOST*, *supra*, 42 Cal.4th 278, a newspaper was denied access to information contained in a database that set minimum selection and training standards for peace

17

officers. The database—which included employment data on all peace officers appointed in California beginning in the 1970's—was compiled from information provided by local law enforcement agencies and obtained from officers' personnel records, and maintained by a public agency that did not employ the officers. (*Id*. at pp. 285–286.) The trial court ordered the information (officers' names, appointing agencies, and dates of appointment and termination) disclosed. The appellate court reversed. (*Id*. at p. 303.)

The Supreme Court reversed the court of appeal, found the information was not exempt under the *Pitchess* statutes, and ordered it disclosed. (*CPOST*, *supra*, 42 Cal.4th at pp. 298–303.) A majority of the court found, however, that information in the database would be exempt from disclosure if it had been "obtained from" personnel records maintained by the officers' employing agencies. (*Id*. at p. 289.) Notably, the court also held that information does not become confidential for purposes of the *Pitchess* statutes merely because it is derived from a personnel file that also contains confidential information. (*CPOST*, at p. 289.) "[P]eace officer personnel records include only the types of information enumerated in [Penal Code] section 832.8." (*Id*. at p. 293.) Because the officers' names and requested employment information were not within any enumerated category, that information must be disclosed. (*Id*. at pp. 294–299.)

In *CPOST*, *supra*, 42 Cal.4th 278, the court stressed that its decision in *Copley Press*, *supra*, 39 Cal.4th 1272 was expressly "qualified," and limited to the specific linking of an officer with a disciplinary hearing. (*CPOST*, at p. 298.) Relying on the statutory language, the court narrowly construed the term "'personal data'" as precluding disclosure of sensitive information such as marital status, home address and officer discipline. (*Id*. at pp. 294–295.) It refused to expand the exemption, explaining that, "[w]ithout a more specific indication in the statute, we hesitate to conclude that the Legislature intended to classify the identity of a public official whose activities are a matter of serious public concern as 'personal data.'" (*Id*. at p. 296.)

Most recently, in *LBPOA*, *supra,* 59 Cal.4th 59, the court addressed a PRA request for the identities of officers involved in the fatal shooting of an unarmed man, as well as

shootings that resulted in serious injury or death within a six-year period. (*Id*. at p. 71.) The city and police officers resisted disclosure, arguing the information was covered by the *Pitchess* statutes' confidentiality protections for personnel records (Pen. Code, §§ 832.7, 832.8). (*LBPOA*, at p. 71.)

The California Supreme Court was not persuaded. It reaffirmed the mandate that courts must adhere to limits drawn by the Legislature in the *Pitchess* statutes. (*LBPOA*, *supra*, 59 Ca1.4th at p. 72.) Officers' names are protected under the *Pitchess* statutes only if *linked* to information in personnel records. (*LBPOA*, at p. 71, citing *CPOST*, *supra*, 42 Cal.4th at p. 295.) Only "records *generated* in connection with . . . appraisal or discipline would come within the statutory definition of personnel records," under Penal Code section 832.8. (*LBPOA*, at p. 71.) The court again refused to "read the phrase 'records relating to . . . [¶] . . . [¶] . . . [e]mployee . . . appraisal[] or discipline' [citation] so broadly as to include every record that might be *considered* for purposes of an officer's appraisal or discipline, for such a broad reading of the statute would sweep virtually all law enforcement records into the protected category of 'personnel records.'" (*Id*. at pp. 71–72.) Only records that themselves reflect "'advancement, appraisal or discipline'" fall within the scope of the Penal Code section 832.8, subdivision (d) exemption. (*Id*. at p. 78.)

Taken together, *Copley Press*, *supra*, 39 Cal.4th 1272, *CPOST*, *supra*, 42 Cal.4th 278 and *LBPOA*, *supra*, 59 Cal.4th 59 reflect express limitations on the reach of the *Pitchess* statutes. As succinctly summed up by the trial court, it is now established that "disciplinary records of peace officers are protected by privilege under the *Pitchess* statutes no matter where those records are generated. . . . Information which is not itself a personnel record is nevertheless protected if it was obtained from a peace officer's personnel record. . . . Only records generated in connection with an administrative appraisal or discipline qualify as *Pitchess* protected personnel records; records generated as part of an internal or administrative investigation of the officer generally are confidential, but other records about an incident are not."

*4.    Portions of the Report are exempt from disclosure under the Act*

There can be no legitimate dispute that the Report is a public record.  The term "public records" is broad, and includes "any writing containing information relating to the conduct of the public's business prepared, owned, used, or retained by any state or local agency."  (§ 6252, subd. (e).)  The records here (the Report) are retained by the City, a local agency, and relate to the public's business because the City commissioned OIR to review and evaluate the PPD's response in a case involving use of lethal force.  (Cf. *CPOST*, *supra*, 42 Cal.4th at p. 288.)  The information and analysis contained in the Report is precisely the sort the disclosure of which will promote public scrutiny of and agency accountability for specific uses of deadly force.  Further, as the trial court aptly observed, the Report "is aimed at the administration of the [PPD] as a whole, not the individual Officers, with the goal of determining what lessons can be gleaned from the McDade incident and its aftermath, and recommending institutional reforms for the future."

The real issue is whether the Report is subject to an exemption.  The mere fact that the Report contains privileged information does not bestow protected status on the entire document.  Police officer personnel records include only the type of information specified in Penal Code section 832.8.  (*CPOST*, *supra*, 42 Cal.4th at p. 293.)  Only records generated in connection with a citizen complaint, or administrative appraisal or discipline, are protected.  (*LBPOA*, *supra*, 59 Cal.4th at p. 71.)

*a.    The Report was not prepared in response to a citizen complaint*

Petitioners argue the Report falls within the ambit of Penal Code section 832.8, subdivision (e) because the trial court found it was prepared in response to a March 25, 2012 citizen complaint regarding the McDade shooting and contains the conclusions of the OIR group, which investigated the complaint regarding the shooting.  Petitioners overstate the record.  The evidence does not clearly reflect that OIR's retention or Report was precipitated by a citizen complaint.  Rather, it shows only that at an unspecified point after the March 24, 2012 incident, the City "hired . . . OIR Group . . . to review the

20

McDade shooting incident." The City's return is silent as to whether the Report was prepared in response to a citizen complaint. However, the unchallenged declaration of Deputy Chief Qualls indicates OIR was not retained for that purpose. Rather, OIR was tasked with conducting an assessment and preparing a Report to "review . . . the incident for the benefit of the department and to evaluate how the department does business in the areas reviewed." The record also reflects that the PPD itself investigated the citizen complaint in the course of its CID and IA investigations.

b.      *Portions of the Report are related to the administrative investigation of the officers and are therefore exempt from disclosure.*

The PPD commissioned OIR to prepare the Report for two related, broad purposes; (1) to analyze the McDade shooting and its aftermath for the purpose of determining what lessons could be learned from the incident; and (2) to recommend institutional reforms. There is no indication it was intended to be used in connection with performance appraisals, or the advancement or discipline of the officers, and the PPD has expressly affirmed that the Report will not be considered in future employment decisions involving those officers. Although the McDade shooting was the catalyst for the Report and provided the lens through which OIR focused its evaluation, the Report looks beyond the conduct of the individual officers. It presents an overview of the PPD's criminal and administrative investigations into the shooting, evaluates the manner in which the PPD's procedures and practices may have fallen short, and recommends institutional improvements. Any analyses in the Report are aimed at the PPD's training, tactics and review process in the wake of the McDade shooting, not the individual officers, even though those analyses use the actions of the officers as a springboard to assess the agency's conduct.

Petitioners have the burden to prove the Report is exempt from disclosure under section 6254, subdivision (k) by virtue of the *Pitchess* statutes. In a situation involving an officer's use of lethal force against an unarmed suspect, the public's interest in disclosure is "particularly great," because such incidents raise serious questions about

governmental policies regarding law enforcement and public safety. (*LBPOA*, *supra*, 59 Cal.4th at p. 74.) Nevertheless, in enacting the *Pitchess* statutes, the Legislature made a policy determination that the desirability for confidentiality in police personnel matters outweighs the public's interest in openness. (*Copley Press*, *supra*, 39 Cal.4th at p. 1298.)

As the trial court correctly found, the Report contains privileged information. The protection for personnel records under section 6254, subdivision (k) applies to any information obtained from an officer's personnel records. (*CPOST*, *supra*, 42 Cal.4th at p. 289.) Accordingly, portions of the Report culled from personnel information or officers' statements made in the course of the PPD's administrative investigation of the McDade shooting are protected by the *Pitchess* statutes. However, other portions of the Report, including the CID investigation, which do not constitute or relate to employee appraisal, are not. (*LBPOA*, *supra*, 59 Cal.4th at p. 71.)

c.      *Nonprivileged portions of the Report are not so intertwined with privileged portions as to render the entire Report exempt from disclosure*

Implicitly conceding that information from the criminal investigation must be disclosed, petitioners argue that information in the Report gleaned from the CID and administrative investigations is inextricably intertwined because the PPD relied heavily on the CID investigation to conduct its administrative review, and OIR had access to all the PPD's investigative materials. Relying on the decisions in *Berkeley Police Assn. v. City of Berkeley* (2008) 167 Cal.App.4th 385 (*Berkeley*) and *Davis v. City of San Diego* (2003) 106 Cal.App.4th 893 (*Davis*), petitioners argue that derivative information from personnel files became so intertwined with the CID investigation that none of the Report may be disclosed.

In *Berkeley*, *supra*, 167 Cal.App.4th 385, the court addressed the question of whether proceedings conducted by a police review commission, established in order to investigate citizens' complaints but which do not impose discipline, fell within Penal Code section 832.5. The commission was a standing body that received written citizen complaints, investigated the allegations and held public hearings on the complaints at

which the officer was required to provide information. The commission then announced its findings on the allegations. (*Id*. at p. 391.) The court found that the commission proceedings "fit the description of [a] [Penal Code] section 832.5" proceeding, and its practice of holding public hearings on citizen complaints violated Penal Code section 832.7, subdivision (a), by disclosing confidential police officer personnel information. (*Id*. at pp. 402, 404–405.)

In *Davis*, *supra*, 106 Cal.App.4th 893, the court enjoined a city from releasing a report about a shooting prepared by a permanent citizens' review board established to review citizen complaints, because the report was derived almost entirely from records relating to a complaint. The report, compiled from personnel records, was itself a personnel record. (*Id*. at p. 900.)

Here the trial court properly rejected petitioners' factually unsupported contention that information regarding the administrative investigation is inextricably intertwined with the criminal investigation so as to render the entire Report exempt. Material from the criminal investigation was generated independently and in advance of the administrative investigation. Officers' personnel records include only the type of information enumerated in Penal Code section 832.8 (*CPOST*, *supra*, 42 Cal.4th at p. 293), and only records generated in connection with an administrative appraisal or discipline are protected. (*LBPOA*, *supra*, 59 Cal.4th at p. 71.) The City acknowledges, and the trial court found, that information obtained from the administrative investigation can be separated from information derived from other sources. That factual determination finds substantial evidentiary support.

Where, as here, nonexempt materials are not inextricably intertwined with exempt materials and are reasonably separable, segregation is required. (See § 6253, subd. (a) ["Any reasonably segregable portion of a record shall be available for inspection by any person requesting the record after deletion of the portions that are exempted by law"]; *CBS, Inc. v. Block*, *supra*, 42 Cal.3d at p. 653 ["The fact that parts of a requested document fall within the terms of an exemption does not justify withholding the entire

document"].)  As proponents of nondisclosure, petitioners bear the "'burden of proof . . . of . . . demonstrat[ing] a "clear overbalance" on the side of confidentiality.'" (*CBS Broadcasting, Inc. v. Superior Court*, *supra*, 91 Cal.App.4th at p. 908.)  "[M]ere assertion[s]" and conjecture will not suffice.  (*CBS, Inc. v. Block*, at pp. 652–653.) Petitioners have not met their burden.

Furthermore, as the trial court observed, the City would face significant problems if its criminal and administrative investigations were not independent.  The criminal investigation was conducted solely "to determine whether a crime occurred.  It [wa]s not conducted for the purpose of an appraisal of officers, for the consideration of discipline . . . ."  Information obtained during the criminal investigation is not administrative information protected by the *Pitchess* statutes.  Records related to the criminal investigation are not personnel records, and do not reveal information regarding "advancement, appraisal, or discipline" of a particular officer.  Only the PPD's administrative review results in a disciplinary recommendation to the Chief.  And, only records related to that process enjoy protection under the *Pitchess* statutes.

d.	*The  PRA does not exempt any record that theoretically could be used in personnel decisions*

Seeking to expand the PRA's reach, petitioners invite us to find that in addition to records generated in connection with "advancement, appraisal, or discipline," Penal Code section 832.8, subdivision (d) should be read to encompass records—like the entire Report—that contain information that "could be used" for such purposes.  We may not and would not do so.  Appellate courts "'do not sit as super-legislatures to determine the wisdom, desirability or propriety of statutes enacted by the Legislature.' [Citation.]  The rewriting of a statute is a legislative, rather than a judicial function, a practice in which we will not engage."  (*California State University Fresno Assn., Inc. v. Superior Court* (2001) 90 Cal.App.4th 810, 828, 830 [refusing to extend coverage of PRA to nongovernmental auxiliary organization of state university because the organization was not a "state agency" as defined by the Act].)

24

The California Supreme Court has made clear that personnel records are confined to the type of information enumerated in Penal Code section 832.8. (*CPOST*, *supra*, 42 Cal.4th at p. 293.) Penal Code section 832.8, subdivision (d) cannot be read so broadly as to include an entire third-party report regarding the PPD's practice in addressing the aftermath of a fatal shooting. Only a small portion of the Report relates to officer "advancement, appraisal, or discipline." Substantial evidence supports the trial court's conclusion that the overarching purpose of the Report is not related to officer appraisal or discipline. Further, based on the sworn declaration of Deputy Chief Qualls, the PPD would be barred from considering the Report in future employment-related decisions regarding these officers. Petitioners dismiss this unequivocal and unchallenged evidence as "speculation," offering their own speculation that the City *could* use the Report in a future review of the officers. Petitioners' argument ignores the express limitations contained in Penal Code section 832.8, subdivision (d), and the Supreme Court's mandate in *CPOST*, *supra*, 42 Cal.4th at p. 293, and would extend the statute beyond its limited purpose.

5. *PRA privilege has not been waived*

a. *The privilege was not waived when the officers placed personnel information in the public domain.*

Interveners argue that petitioners cannot establish that they will suffer harm if the Report is publicly disclosed because the officers waived any right of confidentiality as to information in the public domain, information the officers themselves voluntarily released. Accordingly, to the extent redactions ordered by the trial court—even those which recite to or rely on the administrative investigation, and thus would otherwise be privileged—include information in the public domain, Interveners maintain the officers waived any exemption to disclosure under the PRA. We disagree.

In connection with a summary judgment motion in Slaughter's federal action, the officers filed with the court excerpts from their own deposition transcripts, among others. Those transcripts contain testimony by the officers about their recollections of the

McDade shooting, and their conduct, concerns and strategies. Transcripts of others' depositions, such as PPD Chief Sanchez, reveal information about officer training and a prior OIR report regarding a 2009 officer involved shooting. The transcripts also reflect that the officers used statements they voluntarily gave in the course of the CID investigation to refresh their recollections at deposition, thereby waiving protection for those statements in that litigation. (Evid. Code, § 771, subds (a), (b).)[13] The officers' deposition testimony was given voluntarily, none of the transcripts was filed under seal and the officers chose not to shield their testimony or submissions or to seek a protective order.[14] "'Court records are public records, available to the public in general.'" (*Hurvitz v. Hoefflin* (2000) 84 Cal.App.4th 1232, 1246.) These court records have been publically available since January 2014.

But the officers' public revelation of confidential information does not constitute waiver as to privileged information in the Report. (See *Fagan v. Superior Court* (2003) 111 Cal.App.4th 607, 617 (*Fagan*).)[15] The fact that information in an officer's personnel

---

[13] Evidentiary protections for the statements was waived. The Evidence Code provides: "if a witness, either while testifying or prior thereto, uses a writing to refresh his memory with respect to any matter about which he testifies, such writing must be produced at the hearing at the request of an adverse party and, unless the writing is so produced . . . . [¶] . . . [T]he adverse party may . . . inspect the writing . . . and introduce in evidence such portion of it as may be pertinent to the testimony of the witness." (Evid. Code, § 771, subds. (a), (b); *People v. Smith* (2007) 40 Cal.4th 483, 508–509.)

[14] Police officers have a statutory right to request a protective order when their confidential records are used in court actions. (Evid. Code, § 1045, subd. (d).)

[15] In *Fagan*, *supra*, 111 Cal.App.4th 607, a prosecutor obtained the results of a urinalysis from officers' personnel records for use in a criminal investigation against the officers. (Pen. Code, § 832.7, subd. (a).) (*Id.* at pp. 610, 615–616.) Upon receipt of a PRA request, the district attorney sought publicly to release the results, arguing they lost their confidential status once obtained by his office. (*Id.* at pp. 610, 617.) The appellate court rejected the argument concluding that *Pitchess* protections are not lost for information obtained from an officer's personnel file just because that information is disclosed in a criminal or civil action. (*Fagan*, at p. 617.)

26

records may also be found in an unprotected source does not impact the confidentiality of the personnel records themselves. The "*Pitchess* statutes create a privilege for all information in peace officers' personnel files without regard to information found elsewhere." (*Hackett v. Superior Court* (1993) 13 Cal.App.4th 96, 97, 100.) The purpose and policy of the *Pitchess* statutes mandates that waiver of the privilege must be express. This is true even where, as here, the officers themselves placed the information in the public domain.

Absent an express waiver of the privilege with respect to the confidential, personnel information found in the Report, the officers retain *Pitchess* protections as to that information, even if the information is the same as or similar to information available elsewhere in the public domain. (See *CPOST*, *supra*, 42 Cal.4th at p. 296, fn. 5 ["We do not suggest that the mere fact that officers' names are available from other sources necessarily means that the information cannot be considered personal or private"]; *United States DOD v. FLRA* (1994) 510 U.S. 487, 500 [114 S.Ct. 1006, 127 L.Ed.2d 325] ["An individual's [privacy] interest in controlling the dissemination of information regarding personal matters does not dissolve simply because that information may be available to the public in some form"].)

The officers did not waive privilege as to information in the Report they placed in the public domain. The trial court correctly concluded that redaction was in order for those portions of the Report that contain advancement, appraisal, or discipline information, or were derived from the administrative record.

*b.        The privilege was not waived when the City gave the Report to petitioners*

Nor did waiver occur by virtue of the City's provision of the Report to petitioners. Generally speaking, once disclosed to a member of the public, a record becomes available for public inspection. (*Black Panther Party v. Kehoe* (1974) 42 Cal.App.3d 645, 656–657, § 6254.5.) But waiver occurs only if the agency discloses a document to a "member of the public." (§ 6254.5.) The statutory privilege of confidentiality in officers' personnel records is held both by the City and the officers. (*City of Hemet v.*

27

*Superior Court* (1995) 37 Cal.App.4th 1411, 1430–1431.) Petitioners had a right to review the Report to ascertain which portions they contend are privileged. (§ 3306.5.) They cannot be denied access to their own personnel records for fear that permitting access will waive confidentiality. It was not improper for the City to share the Report in confidence with petitioners, and no waiver may be implied therefrom.

> ### c. *No waiver by public disclosure of redacted material on appeal*

As noted above, petitioners publicly filed a Reply brief containing verbatim excerpts of the Report, i.e., significant portions of the very material they contend is confidential. The Slaughter parties insist that such disclosure constitutes "changed circumstances" which operate to waive any privilege that may arguably have attached to the disclosed material. We disagree.

Just as petitioners' public disclosure of their deposition testimony in Slaughter's federal action against them did not operate to waive their right of confidentiality as to protected personnel records, their disclosure in this proceeding of excerpts from the Report does not operate as a waiver of their right to confidentiality. As explained by the trial court, "[i]nformation obtained from a police officer's personnel record is protected." (See *CPOST*, *supra*, 42 Cal.4th at p. 289.) In *CPOST*, the Supreme Court held that an officer could not waive the privilege as to such information without expressly doing so. No express waiver occurred here. To paraphrase *CPOST*, "the mere fact that [privileged personnel information is] available from other sources [does not] necessarily mean[] that the information cannot be considered personal or private." (*Id.* at p. 296, fn. 5; see *Department of Defense v. FLRA*, *supra*, 510 U.S. at p. 500 [individual's privacy interest in controlling dissemination of information regarding personal matters "does not dissolve simply because that information may be available to the public in some form"].)[16]

---

[16] We agree with petitioners that questionable police shootings and recent unrest throughout the country does not bear on the issue of petitioners' right to confidentiality as to portions of the Report. As profoundly troubling as these events are and have been, and as significant as the public interest is in the complex and nuanced debate surrounding

*6.      The trial court applied the PRA exemption too broadly*

Our review of the Report reveals the trial court's redactions are overbroad. Information properly classified as personnel records must be redacted from the Report. The remainder, however, including analyses of the PPD's response to and handling of the investigation of the McDade shooting, and OIR's recommendations for institutional reform, must be disclosed publicly. "The fact that parts of a requested document fall within the terms of an exemption does not justify withholding the entire document." (*CBS, Inc. v. Block*, *supra*, 42 Cal.3d at p. 653; § 6253, subd. (a) ["[a]ny reasonably segregable portion of a record shall be available for inspection . . . after deletion of the portions that are exempted by law"].)

Petitioners, of course, argue that not enough information was redacted from the Report. Interveners, who chose not to seek review under section 6259, argue that too much information was redacted. We invited and have considered the parties' arguments on the question of the scope of this court's authority to grant relief not sought in the only petition before us. We conclude that this court has the authority to determine whether the trial court erred in ordering the current breadth of redactions from the Report, a determination which encompasses within its scope both the issue of whether the trial court redacted too little (petitioners' position) or too much (Interveners' position).

We conclude that the issue of the appropriate extent of redactions is encompassed within the scope of the challenged judgment. Because the Report has remained sealed throughout this litigation, Interveners have no way to ascertain that too much information

---

police use of force and allegations of institutional racism, those issues do not bear directly on the circumstances at issue here. Such events (which occurred outside of Pasadena) and concerns do not negate the statutory *Pitchess* protections as they apply to the officers. (Pen. Code, §§ 832.7, 832.8.) For this reason—and for the independent reason that we have no need to consult the PRA's Legislative history—we deny the Times' request for judicial notice (See *Deveny v. Entropin, Inc.* (2006) 139 Cal.App.4th 408, 418 [judicial notice will not be granted unless matter for which judicial notice is sought is relevant and helpful toward resolving matters at issue].)

was culled from the Report. Because the trial court articulated the correct legal standard, they may reasonably have concluded there was no basis upon which to seek review. Principles of equity and those outlined in Code of Civil Procedure section 906 require that the court's redaction order be modified even though the grounds justifying that modification were not raised by petitioners and Interveners did not file their own cross-petitions. Specifically, that statute provides that "the reviewing court may review . . . any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from or which substantially affects the rights of a party . . . , and may affirm, reverse or modify any judgment or order appealed from and may direct the proper judgment or order to be entered . . . ." The Legislature has recognized the inherent authority of courts to manage their proceedings and adopt suitable methods of practice. Every court has the power "[t]o amend and control its process and orders so as to make them conform to law and justice." (Code Civ. Proc., § 128, subd. (a)(8); see Code Civ. Proc., § 187 ["When jurisdiction is, by the Constitution . . . or by any . . . statute, conferred on a Court . . ., all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by . . . statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code"].)

"It is also well established that[, independent of any statutory authority,] courts have fundamental inherent equity, supervisory, and administrative powers, as well as inherent power to control litigation before them." (*Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 967; see *Stephen Slesinger, Inc. v. Walt Disney Co.* (2007) 155 Cal.App.4th 736, 758 ["From their creation by article VI, section 1 of the California Constitution, California courts received broad inherent power 'not confined by or dependent on statutes,'" which includes the "'inherent power to control litigation'"].) These principles apply equally on appeal or in a writ proceeding. Where, as here, an issue in the case was necessarily encompassed by the questions raised in the writ petition,

30

"fully briefed in the trial court," and is "an issue of law," we may review that issue and grant affirmative relief to a party who did not file a writ petition, even where the trial court found in favor of petitioner on that issue. (See *Securitas Security Services USA, Inc. v. Superior Court* (2015) 234 Cal.App.4th 1109, 1125.)

The City maintains it would be prejudiced by a grant of relief beyond that sought by petitioners (i.e., fewer redactions from the Report), as it has not yet had an opportunity to brief the issue. This contention is meritless. The City has had (and has taken) the opportunity to address the propriety of redacting portions of the Report, both here and before the trial court. Indeed, it urges us to find that the trial court's redactions appropriately protect the officers. Further, the City has been on notice since before it filed its Return that Interveners would urge this court to conclude that the Report was over redacted.

The question of whether the trial court erred regarding the extent of its redactions is a question of law, fully briefed and embraced within the challenged order. Petitioners opened the door to this issue by filing a writ petition challenging the scope of the court's redactions. They have invited this court to review the challenged order in its entirety and to scrutinize specific redactions made by the trial court. We conclude that the principles embraced by Code of Civil Procedure sections 906, 128 and 187, considered in light of the PRA's goal to accelerate appellate review, not limit its scope (*Times Mirror Co. v. Superior Court* (1991) 53 Cal.3d 1325, 1334), militate in favor of a determination that the trial court failed to adhere to the rule it correctly articulated, and an order directing the court to release additional nonprivileged portions of the Report.

Information not obtained from findings of an internal or administrative investigation of the officers, or the privileged personnel records of any officer, is not shielded from disclosure. The *Pitchess* statutes do not exempt "every record that might be *considered* for purposes of an officer's appraisal." (*LBPOA*, *supra*, 59 Cal.4th at p. 72; accord, *CPOST*, *supra*, 42 Cal.4th at p. 293 [*Pitchess* statutes do not exempt

information "merely because [it] is contained in a file that also includes the type of confidential information specified in" Pen. Code, §§ 832.5–832.8].)

"Appraisal," as that term is employed in the *Pitchess* statutes, does not encompass review of an agency's practices and procedures. "The people have the right of access to information concerning the conduct of the people's business," (Cal. Const., art. I, § 3, subd. (b)), and their right of access must be "broadly construed." The public's interest in disclosure is "particularly great" where, as here, the underlying case involves an officer involved shootings and policies regarding public safety and law enforcement. (*LBPOA*, *supra*, 59 Cal.4th at p. 74.) No *Pitchess* protections statutes attach to material in the Report derived primarily from non-confidential records not intended to be part of the officers' personnel matters or to be used in connection with officer advancement, appraisal or disciplinary proceedings. A number of redactions proposed by the City and largely adopted by the trial court protected not privileged information relating to the officers, but information or findings critiquing conduct by or the policies and practice of the PPD itself. Any redaction of such material subverts the public's right to "'be kept fully informed of the activities of its peace officers'" "'[i]n order to maintain trust in its police department[].'" (*CPOST*, *supra*, 42 Cal.4th at p. 297.)

Appendix A to this decision, filed under seal, contains a nonexhaustive list of material in the Report erroneously redacted by the trial court. On remand, the trial court, after revisiting the Report and bearing the principles articulated in this opinion in mind, may conclude that additional information must also publically be released. Accordingly, we will deny the petition and remand the matter to the superior court with directions to conduct the additional proceedings it deems appropriate and issue a new or modified judgment ordering additional redactions in accordance with this opinion. When that judgment issues, appendix A shall be immediately unsealed.[17]

_____

[17] In connection with proceedings on remand, we note the following: On November 4, 2014, the trial court ordered the City to lodge two documents under seal:

32

## DISPOSITION

The petition is denied.  The matter is remanded to the trial court to conduct additional proceedings to reconsider which portions of the Office of Independent Review Group's August 2014 report of the City of Pasadena concerning the officer involved shooting of Kendrec McDade contain confidential personnel records and order additional material released, including appendix A hereto, and to issue a new or modified judgment in conformance with this opinion.  The order to show cause, having served its purpose, is discharged.  The parties are to bear their own costs.

CERTIFIED FOR PUBLICATION.


JOHNSON, J.


We concur:


ROTHSCHILD, P. J.


CHANEY, J.

---

(1) a revised redacted Report containing modifications ordered by the court on November 4, 2014, and (2) unredacted copies of pages 55, 57 and 58 of the Report.  The unredacted pages 55, 57 and 58 were attached as "Exhibit '2'" to a "Notice of Lodging Under Seal Documents re: OIR Report pursuant to 11/4/14 Oral Order," and lodged under seal by the City on November 6, 2014.  As submitted under seal in this court, *unredacted* pages 55, 57 and 58 remain attached to the *redacted* Report ordered released on November 13, 2014.  We assume the trial court did not intend to include this unredacted material in the redacted version of the Report it ordered released.  On remand, the court should review and clarify this issue in its modified judgment; of course, the trial court's order shall mandate unredacted disclosure of that portion of page 57 of the OIR Report which this court has determined should be disclosed.