Filed 4/12/18

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| PASADENA POLICE OFFICERS ASSOCIATION et al., | B275566 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC556464) |
| v. | |
| CITY OF PASADENA, | |
| Defendant and Respondent; | |
| LOS ANGELES TIMES COMMUNICATIONS, LLC, | |
| Intervener and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, James C. Chalfant, Judge.  Affirmed in part and reversed in part with directions.

Davis Wright Tremaine, Kelli L. Sager, Rochelle L. Wilcox, Dan Laidman; Los Angeles Times Communications, Jeff Glasser; Jassy Vick Carolan, Jean-Paul Jassy and Kevin L. Vick for Intervener and Appellant.

Nikki Moore for California News Publishers Association as Amicus Curiae on behalf of Intervener and Appellant.

Katie Townsend, Bruce D. Brown and Caitlin Vogus for Reporters Committee for Freedom of the Press as Amicus Curiae on behalf of Intervener and Appellant.

Rains Lucia Stern St. Phalle & Silver, Timothy K. Talbot and Jacob A. Kalinksi for Plaintiffs and Respondents.

Michele Beal Bagneris, City Attorney, and Javan N. Radfor, Chief Assistant City Attorney, for Defendant and Respondent.

_____

Following our decision in *Pasadena Police Officers Assn. v. Superior Court* (2015) 240 Cal.App.4th 268 (*Pasadena Police*), the Los Angeles Times (Times) moved for attorney fees from the City of Pasadena (City) under the California Public Records Act (Gov. Code, § 6259, subd. (d)) (PRA). The Times also sought fees from the City, the two involved police officers and the Pasadena Police Officers Association (PPOA), under the private attorney general statute (Code Civ. Proc., § 1021.5 (hereafter § 1021.5)). The trial court ultimately awarded the Times limited fees under the PRA against the City and declined to award the Times any fees under section 1021.5. We affirm in part and reverse in part, with directions.

## BACKGROUND

### I. The trial court's decision on the merits[1]

On March 24, 2012, just after 11:00 p.m., Pasadena Police Department (PPD) officers responded to a 911 call. The caller

_____

[1] Because the underlying facts are not in dispute, we have largely adopted the facts as set forth in our previous decision in *Pasadena Police*, *supra*, 240 Cal.App.4th 268.

2

claimed to have been robbed at gunpoint by two men. Much later, the caller admitted he had falsely reported that the robbers were armed. Responding to the call, the officers proceeded in their squad car to the area of the alleged crime. As they approached the intersection, Kendrec McDade (McDade), a 19-year-old African-American male, began running. The officers pursued McDade for about two blocks. Officer Matthew Griffin fired four shots at McDade from inside the patrol car. Officer Jeffrey Newlen, having previously exited the squad car to give chase, fired four more shots, killing McDade. It was later discovered that McDade was not armed. (*Pasadena Police, supra*, 240 Cal.App.4th at p. 275.)

The shooting spawned multiple investigations, a citizen's complaint and a federal lawsuit by McDade's mother, Anya Slaughter (Slaughter), against the officers and the City. The Los Angeles District Attorney conducted a criminal investigation which concluded with a finding that, due to the false report, the officers reasonably believed McDade was armed. No criminal charges were filed against the officers. The Federal Bureau of Investigation (FBI) conducted a civil rights investigation of the shooting, which ultimately was closed without the filing of criminal charges or a civil complaint. Slaughter's federal action against the City and the officers was settled. (*Pasadena Police, supra*, 240 Cal.App.4th at pp. 275–276.)

The PPD conducted its own investigations. Two of the investigations were conducted immediately after the McDade shooting. The purpose of the first investigation, undertaken by the PPD's Criminal Investigations Division (CID), was to determine whether the officers had committed a crime. A different group of PPD investigators conducted a separate

3

internal affairs (IA) investigation.  The PPD also investigated the citizen's complaint during its CID and IA investigations.  In March 2013, the PPD conducted a third investigation—an administrative review based on evidence collected during the CID and IA investigations.  That review concluded that the officers had acted within departmental policy because they reasonably believed McDade was armed and assaulting an officer and shot McDade in self-defense and in defense of one another.  (*Pasadena Police, supra*, 240 Cal.App.4th at p. 276.)

The City also retained the Office of Independent Review Group (OIR) as a private consultant to conduct an independent review of the shooting.  According to PPD Deputy Chief Darryl Qualls, " '[t]he purpose of the [OIR]'s review . . . was to serve as a review of the incident for the benefit of the department and to evaluate how the [PPD] does business in the areas reviewed.' " Deputy Chief Qualls also stated that the PPD would not use the OIR report " 'to (1) affect the officers' advancement; (2) conduct an appraisal of the officers; or (3) consider discipline of the officers.' "  The trial court found that the City had retained the OIR in order to evaluate the thoroughness and objectivity of the PPD's investigations of the shooting, the adequacy of officer training, what lessons had been learned from the incident and, based on the OIR's review and conclusions, to recommend institutional reforms.  (*Pasadena Police, supra*, 240 Cal.App.4th at pp. 276–277.)

In August 2014, the OIR submitted a 70-page report entitled "Report to the City of Pasadena Concerning the Officer-Involved Shooting of Kendrec McDade" (the OIR report).  The

4

interveners[2] then submitted requests to the City for disclosure of the OIR report pursuant to the PRA.[3]  On September 3, 2014, while the PRA requests were still pending, the PPOA and Officers Griffin and Newlen (collectively, the Plaintiffs) initiated a reverse-PRA action, seeking and obtaining a temporary restraining order (TRO) preventing the release of the OIR report.[4]  (*Pasadena Police, supra*, 240 Cal.App.4th at p. 277.)

---

[2] At the time, the interveners consisted of Anya Slaughter, Kris Ockershauser, the Pasadena Branch of the National Association for the Advancement of Colored People, ACT, and the Interdenominational Ministerial Alliance of Greater Pasadena (the Slaughter parties).  The Times did not seek to intervene until September 16, 2014.  (*Pasadena Police, supra*, 240 Cal.App.4th at p. 277.)  The Slaughter parties are not part of the present appeal.

[3] Instead of immediately responding to the PRA requests, the City advised the PPOA that the City had received the requests and would need to respond to them by September 4, 2014.  The City told the PPOA that the PPOA needed to take legal action before that date if it did not want to have the OIR report released and noted that:  "An argument has been made that the release of the OIR report would violate certain statutory and privacy rights of the involved officers."  It is unclear if the City's purposeful delay was allowed under the PRA, which mandates that copies be provided promptly upon payment of fees covering direct cost of duplication or statutory fee, if applicable. (See *Marken v. Santa Monica-Malibu Unified School Dist. (*2012) 202 Cal.App.4th 1250, 1268, fn. 14 (*Marken*).)

[4] A reverse-PRA action may be filed when a party believes it will be adversely affected by the disclosure of a document it contends is confidential and seeks a judicial ruling precluding a public agency from disclosing the document. (*Marken, supra,* 202 Cal.App.4th at p. 1267.)  Like an action to compel disclosure

5

On September 9, 2014, the trial court vacated the TRO because the matter was not yet ripe and ordered the City to respond to the interveners' PRA requests and to give the Plaintiffs notice if it intended to disclose the OIR report. That same day, the interveners submitted new or renewed PRA requests for the OIR report to the City. On September 11, 2014, the City announced that unless the trial court directed otherwise, it would release the OIR report the following week but would redact portions of the OIR report containing confidential police officer personnel records. (*Pasadena Police, supra*, 240 Cal.App.4th at p. 277.)

On September 16, 2014, the Plaintiffs filed an ex parte application seeking to enjoin the City from releasing any portion of the OIR report. The same day, the Times filed a motion seeking to intervene in this action and also filed a writ petition seeking to compel release of the OIR report without redactions. The trial court granted leave to intervene. (*Pasadena Police, supra*, 240 Cal.App.4th at p. 277.)

On October 16, 2014, the trial court issued its decision. The trial court acknowledged the parties' competing positions regarding disclosure of the OIR report—the interveners contended the OIR report was a public record and should be disclosed in its entirety while the Plaintiffs claimed the OIR report was a confidential personnel record entirely exempt from disclosure under the *Pitchess* statutes (Pen. Code, §§ 832.5, 832.7, 832.8; see *Pitchess v. Superior Court* (1974) 11 Cal.3d 531) as well

---

under the PRA itself, a reverse-PRA suit seeks judicial review of an agency decision under the PRA. It does not ask the court to undertake the decisionmaking in the first instance. (*Id.* at p. 1265.)

6

as the privilege exemption of the PRA (Gov. Code, § 6254, subd. (k)).  However, the City argued that all but about 20 percent of the OIR report (which it agreed was confidential personnel information) should be disclosed.  (*Pasadena Police, supra*, 240 Cal.App.4th at p. 277.)

The trial court determined the OIR report was indisputably a public record and that the public's interest in disclosure was particularly substantial because it related to officer involved shootings and governmental policies regarding law enforcement and public safety.  (*Pasadena Police, supra*, 240 Cal.App.4th at pp. 277–278.)  Nevertheless, the trial court found, the administrative and criminal investigations conducted in the case were clearly separate investigations.  (*Id*. at p. 278.)  Although the criminal investigation revealed no  information about the advancement, appraisal, or discipline of a particular officer, and thus did not constitute a personnel record, the same could not be said of the administrative investigation.  (*Ibid*.)  Therefore, those portions of the OIR report containing privileged personnel information generated in connection with the PPD's administrative investigation that qualified for protection must be redacted.[5]  (*Ibid*.)

On November 13, 2014, after reviewing the City's and Plaintiff's proposed redactions to the OIR report, the trial court entered judgment and ordered release of the redacted report.  The trial court vacated its September 16, 2014 TRO, but stayed the effect of its vacation order and judgment for 20 days to permit the parties to seek review of the judgment.

---

[5] The trial court ordered approximately 14 pages of the 70-page report to be redacted from the publicly-released copy of the OIR report.

7

The Plaintiffs then filed a writ of mandate, seeking review of the trial court's disclosure order. (*Pasadena Police, supra*, 240 Cal.App.4th at p. 279.) According to the Plaintiffs, the entire OIR report was privileged because it was, in effect, a personnel file. At the very least, substantial parts of the OIR report which the trial court had refused to redact were personnel material in nature and type as described in Penal Code sections 832.5 and 832.6, and Evidence Code sections 1043 and 1045. (*Id*. at p. 281.) Thus, the Plaintiffs sought to preclude disclosure of the entire OIR report or, in the alternative, the production of a more heavily redacted OIR report. (*Id*. at p. 275.) The Times insisted that the OIR report was a public record and should have been disclosed in its entirety. (*Id*. at pp. 277, 282.)

We held that the trial court correctly concluded the OIR report itself was a public document. The trial court also correctly determined that portions of the OIR report contained confidential personnel information exempt from disclosure under the PRA. We further held, however, that the trial court's redactions went too far. Some of the material the trial court ordered redacted was unrelated to personnel files of individual officers. The inappropriately redacted material included analyses of the PPD's administrative investigation and departmental policies, descriptions of the PPD's responsiveness (or the absence thereof), and the OIR's recommendations, none of which was privileged under the PRA. (*Pasadena Police*, *supra*, 240 Cal.App.4th at p. 275.) In short, we determined that a number of redactions proposed by the City and largely adopted by the trial court protected not privileged information relating to the officers, but information or findings evaluating conduct by, or the policies and practice of, the PPD itself. Any redaction of such material, we

held, would subvert the public's right to be kept fully informed of the activities of its peace officers in order to maintain trust in its police department. (*Id.* at p. 298.)

Consequently, we denied the writ petition and remanded the matter to the trial court so it could reconsider which portions of the OIR report contained confidential personnel records. We also ordered additional material released, including an appendix we attached to our opinion, and directed the trial court to issue a new or modified judgment in conformance with our decision. (*Pasadena Police*, *supra*, 240 Cal.App.4th at p. 299.) On remand, the trial court conducted further proceedings as directed by our opinion and ultimately ordered disclosure of an additional 126 lines of the OIR report, constituting about five of the 14 previously redacted pages. On December 2, 2015, the City released this version of the report.

## II.    The trial court's attorney fees decision

On December 22, 2015, the Times filed a motion for attorney fees and costs (the fee motion).[6] The Times sought

---

[6] The Slaughter parties and the PPOA also moved for attorney fees. The trial court ultimately awarded the Slaughter parties $67,158 in fees. The trial court held that the PPOA's motion was defective because it did not identify the parties from whom it sought fees. The trial court further held that the PPOA was not entitled to attorney fees under the PRA because such fees were not available to a plaintiff seeking to prevent disclosure of a document using a reverse-PRA action. Nor was the PPOA entitled to fees under the private attorney general's statute because it did not succeed in its primary litigation goal—preventing disclosure of the OIR report in its entirety—and thus could not be considered a successful party under the statute. Furthermore, the trial court noted, there was no need for the

attorney fees from the City under the PRA (Gov. Code, § 6259, subd. (d)) and from both the City and the PPOA under the private attorney general statute (Code Civ. Proc., § 1021.5) Code of Civil Procedure section 1021.5.[7]  Specifically, the Times sought recovery of $261,327 for its work during the writ proceedings as well as an additional $89,095 incurred in connection with post-remand issues, including the fee motion, for a total of $350,422.

On April 14, 2016, the trial court issued an order granting the Times' fee motion in part and denying it in part.  With respect to fee recovery under the PRA, the trial court held that the Times could recover fees only for the work it performed to affirmatively enforce the PRA requests it had lodged with the

PPOA's lawsuit because the City's proposed redactions were sufficient to protect the police officers' personnel records.

[7] If a records requester prevails against a public agency, the requester can recover fees under the PRA (Gov. Code, § 6259, subd. (d)).  If a requester prevails against a third party that sued to enjoin disclosure in a reverse-PRA action, the requester can recover fees under section 1021.5.  Government Code section 6259, subdivision (d), provides for mandatory fees:  "The court shall award court costs and reasonable attorney fees to the plaintiff should the plaintiff prevail in litigation filed pursuant to this section."  Under section 1021.5, a fee award is discretionary:  "[A] court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if:  (a) a significant benefit . . . has been conferred on the general public . . . , (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

City, but not for the work it had performed to defend against the PPOA's reverse-PRA action.[8] According to the trial court, however, the Times was principally opposed by the PPOA, not the City, throughout the litigation. For example, the trial court noted, the PPOA sought to prevent the release of the OIR report, filed the mandamus proceedings in the Court of Appeal, and argued against the trial court's subsequent unredactions.[9] Unlike the PPOA, the City did not seek mandamus and its sole argument in opposition to additional disclosure occurred in letter briefs solicited by the Court of Appeal when deciding if it could provide affirmative relief to the interveners. The City's position was that the Court of Appeal should not order any unredactions unless the City could brief the issue—an argument which the Court of Appeal rejected.[10]

---

[8] Citing *Marken supra*, 202 Cal.App.4th at page 1267, the trial court noted that Government Code section 6259, subdivision (d), has no application in a reverse-PRA action, thus precluding the Times from seeking fees against the PPOA under the PRA. Although the Times expressly disavowed any attempt to recover fees from the PPOA under the PRA, the PPOA still addressed the issue in its opposition to the Times' fee motion.

[9] As noted above, the unredactions consisted of an additional 126 lines of the OIR report—about five of the 14 previously redacted pages.

[10] We rejected this argument because the City had already addressed the propriety of redacting portions of the OIR report, both on appeal and before the trial court. Indeed, the City urged us to find that the trial court's redactions appropriately protected the officers. Further, we noted, the City was well aware the interveners would urge us to conclude that the OIR report was

11

The trial court concluded that the City had taken the correct position at trial, using the appropriate legal standard for disclosure of an OIR report redacted to protect the officers' personnel file records under the *Pitchess* statutes. The City maintained this position on mandamus review, except it opposed additional unredactions for procedural reasons when the issue was raised by the Court of Appeal. Therefore, the trial court held, the Times was the prevailing party against the City only for the narrow matter of fees incurred during appellate mandamus review and subsequent trial court hearings regarding additional unredactions. Thus, with respect to fee recovery under the PRA, the Times was entitled to recover attorney fees from the City only as to this particular limited time period.

With respect to fee recovery under section 1021.5, the trial court found that overall the Times had met all the elements required for a fee award—the Times had succeeded in the litigation; enforced an important right affecting the public interest; conferred a significant benefit on the public; and private enforcement by the Times was necessary.

Despite satisfying the overall requirements of section 1021.5, the trial court held that the Times could not recover fees against the City under the statute, which does not provide an independent basis for an attorney fee award when there are already existing specific statutory fee provisions—such as the PRA—that apply.

As against the PPOA, the trial court determined that the Times was clearly a successful party. The PPOA sought to

---

overredacted. (*Pasadena Police*, *supra*, 240 Cal.App.4th at p. 297.)

12

prevent disclosure of the entire OIR report while the Times sought the disclosure of the entire OIR report. The trial court noted that its prior judgment ordering release of the redacted OIR report—and our subsequent decision denying PPOA's mandamus claim—clearly demonstrated the Times had obtained the majority of the relief it sought when intervening in this case. The Times' advocacy also enforced an important right affecting the public interest conferring a significant benefit on the general public by ensuring disclosure of the majority of the OIR report and opposing PPOA's attempts to prevent disclosure.

The necessity and burden also weighed in favor of a fee award, given that it was unclear whether the City would adequately represent the Times' interests in opposing the PPOA. Indeed, the trial court observed, the Times and the City disagreed over the extent and necessity of the redactions in the OIR report throughout the litigation. When the Times intervened, a TRO had been issued preventing disclosure of the OIR report and the City had not opposed issuance of the TRO.[11] Lastly, the trial noted, while the Times did not receive any direct monetary benefit from ensuring the release of the OIR report, it was forced to pay significant amounts of attorney fees in order to ensure that the OIR report would be released.

---

[11] In addition to not opposing issuance of the TRO, the City arguably caused the PPOA to seek out a TRO in the first place. The City told the PPOA that the PPOA needed to take legal action before September 4, 2014, if it did not want to have the OIR report released. The City also outlined an argument the PPOA could make in seeking a TRO by noting that release of the OIR report could violate certain statutory and privacy rights of the involved officers.

13

Nevertheless, although the Times could theoretically recover fees from the PPOA under the statute, the trial court went on to find that recovery was barred under *Adoption of Joshua S.* (2008) 42 Cal.4th 945 (*Joshua S.*), which held that a private individual could not be held liable for fees under section 1021.5 when that individual sought a judgment that determined only his or her private rights and did nothing to adversely affect the public interest other than being on the losing side of an important appellate case.

Here, the trial court noted, Officers Newlin and Griffith were private litigants who sought to protect their privacy rights under the *Pitchess* statutes from disclosure of information in their personnel file. The PPOA, their union, was acting in a representative capacity and not on its own behalf. According to the trial court, while the issue was close, PPOA's reverse-PRA lawsuit was within the scope of *Joshua S.*'s protection. Officers Newlin and Griffin, with the PPOA as their representative, were protecting their statutory rights in filing their lawsuit. That they sought to protect their privacy by preventing the disclosure of a report that otherwise was required to be disclosed in the public interest did not overcome this fact, the trial court held. Therefore, the trial court exercised its discretion not to award the Times fees under section 1021.5 against the PPOA or the officers.

In all, the trial court awarded the Times reasonable fees under the PRA against the City—but only for a limited time period—and declined to award the Times any fees under section 1021.5 against the City or the PPOA. The court then ordered the parties to meet and confer and determine the correct amount to award the Times for attorney fees incurred in the Court of Appeal

14

and post-appeal concerning the additional unredactions.[12]  The trial court noted that the amount would be a "small fraction" of the fees sought and would be reduced further given that the Times and the Slaughter parties had acted together in seeking disclosure, creating duplicative attorney efforts on these issues. "They had the right to so," the trial court observed, "but the City cannot be asked to pay for multiple attorneys working on the same issue."

Pursuant to the trial court's order, the Times identified the fees it had incurred during appellate mandamus review as well as the subsequent trial court hearings regarding additional unredactions—less any fees incurred for duplicative work by counsel for the Times and the Slaughter parties.  The Times submitted billing records indicating that its counsel billed $50,163 for time spent addressing the unredaction issue in the Court of Appeal and further billed $10,781 for the post-remand unredaction issues.  The Times sought an additional $5,760 in attorney fees for the court-ordered meet and confer and supplemental briefing.  When added to the $15,000 previously awarded by the trial court for counsel's preparation of the fee motion, the Times sought a total of $81,704.

The trial court subsequently held that a 50 percent reduction for duplicative attorney efforts was appropriate in this case and also declined to award the Times additional fees for its supplemental briefing during the meet and confer process.  In the end, the trial court awarded the Times a total of $45,472 in

---

[12] In addition to the as yet unknown number for the unredaction issue, the Times was awarded fees of $15,000 for its fee motion to obtain this limited award.

attorney fees—$30,472 for the unredaction issues and $15,000 for the fee motion.[13]

On appeal, the Times contends the trial court incorrectly applied *Joshua S.* in denying section 1021.5 fees and that the Times is entitled to attorney fees against the officers and the PPOA under the statute.[14]  The Times also contends it is entitled to additional attorney fees against the City under the PRA.[15] According to the Times, the trial court incorrectly determined that the Times had prevailed against the City only for a limited time period and that the trial court's subsequent 50 percent reduction of the Times' fee award under the PRA was both unreasonable and contrary to the statute's purpose.

---

[13] The trial court awarded the Slaughter parties $67,158 in attorney fees—$25,000 for the unredaction issues, as agreed to by the City and the Slaughter parties; $27,158 for fees incurred before September 11, 2014; and $15,000 for the fee motion.  (As noted above, on September 11, 2014, the City said that unless directed otherwise, it would release the OIR report while redacting those portions of the report containing confidential personnel records.  See *Pasadena Police, supra*, 240 Cal.App.4th at p. 277.)

[14] The Times does not appeal the trial court's determination that attorney fees are not available against the City under section 1021.5.

[15] As noted above, the Times has never argued that attorney fees were available against the officers or the PPOA under the PRA.

## DISCUSSION

### I.     Code of Civil Procedure section 1021.5

#### A.     STANDARD OF REVIEW

Code of Civil Procedure section 1021.5—the private attorney general statute—authorizes an award of fees when (1) the action resulted in the enforcement of an important right affecting the public interest, (2) a significant benefit was conferred on the general public, and (3) the necessity and financial burden of private enforcement make the award appropriate.  (*Serrano v. Stefan Merli Plastering Co., Inc.* (2011) 52 Cal.4th 1018, 1026 (*Serrano*).)  "[F]ees granted under the private attorney general theory are not intended to punish those who violate the law but rather to ensure that those who have acted to protect public interest will not be forced to shoulder the cost of litigation." (*San Bernardino Valley Audubon Society, Inc. v. County of San Bernardino* (1984) 155 Cal.App.3d 738, 756.)  Thus, the statute " 'acts as an incentive for the pursuit of public interest-related litigation that might otherwise have been too costly to bring.' " (*Center for Biological Diversity v. County of San Bernardino* (2010) 188 Cal.App.4th 603, 611–612.)  Fees must be awarded under section 1021.5 when the statutory criteria have been met "unless special circumstances render such an award unjust." (*Robinson v. City of Chowchilla* (2011) 202 Cal.App.4th 382, 391.)

Our review of an order granting a section 1021.5 award of attorney fees is limited to whether the trial court abused its discretion.  (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132 (*Ketchum*).)  Under that standard, we will overturn an order, only if we find "that, under all the evidence viewed most favorably in support of the trial court's decision, no judge could reasonably

17

have made the challenged order." (*County of Kern v. Ginn* (1983) 146 Cal.App.3d 1107, 1115.) "The ' "experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong." ' " (*Ketchum*, at p. 1132.) Here, the trial court found that the Times satisfied all the statutory requirements of section 1021.5 but determined that *Joshua S.* precluded a fee award under the statute. Thus, the Times contends, de novo review is appropriate here. (See *Serrano*, *supra*, 52 Cal.4th at p. 1026.) We need not resolve which standard of review is proper, however. The trial court erred under either standard.

B. MERITS

1. *Threshold issues*

At the outset, the PPOA argues that the Times cannot seek fees against the union under section 1021.5 because the PRA's fee-shifting provision (Gov. Code, § 6259, subd. (d)) is the solely applicable statute. However, the PPOA brought its reverse-PRA action pursuant to *Marken*, not the PRA. Indeed, the *Marken* court's rationale for recognizing reverse-PRA lawsuits is that they are not permitted under and do not arise from the PRA.[16]

---

[16] As the *Marken*, *supra*, 202 Cal.App.4th 1250 court recognized, although the PRA "provides a specific statutory procedure for the resolution of disputes between the party seeking disclosure and the public agency, no comparable procedure exists for an interested third party to obtain a judicial ruling precluding a public agency from improperly disclosing confidential documents." (*Id.* at p. 1267.) Therefore, third parties must bring an independent action for declaratory relief or

18

(*Marken*, *supra*, 202 Cal.App.4th at p. 1267.) Consequently, as the trial court correctly concluded, the PRA does not authorize, and thus cannot limit, fee-shifting against third parties who pursue reverse-PRA suits under *Marken*.

The trial court also correctly determined that the Times was not collaterally estopped from recovering section 1021.5 fees based on a 2011 ruling in a different case involving a different police union—*Los Angeles Times Communications LLC v. Los Angeles County Sheriff's Department*, Super. Ct. L.A. County, 2011, No. BS123076 (*Los Angeles Times v. Sheriff's Department*). Collateral estoppel precludes relitigation of issues argued and decided in prior proceedings. (*Teitelbaum Furs, Inc. v. Dominion Ins. Co., Ltd.* (1962) 58 Cal.2d 601, 604.) We apply the doctrine only if several threshold requirements are met. First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to a former proceeding. (*People v. Taylor* (1974) 12 Cal.3d 686, 691.)

In *Los Angeles Times v. Sheriff's Department*, the Times successfully sued the sheriff's department to compel the disclosure of public records. The Times then moved for an award of attorney fees under the PRA and section 1021.5 against both the sheriff's department and a law enforcement union that had

---

traditional mandamus if they believe they will be adversely affected by disclosure. (*Ibid*.)

intervened in the case.  With respect to fees under the PRA, the trial court granted the Times' fee request against the sheriff's department but denied the Times' fee request against the union because Government Code section 6259, subdivision (d), expressly mandates that the public agency—and only the public agency—pay the attorney fees of a prevailing plaintiff under the PRA.

With respect to fees under section 1021.5, the trial court denied the Times' fee request against both the sheriff's department and the union because "[Government Code] section 6259[, subdivision] (d) provides the exclusive method by which a prevailing plaintiff or defendant can obtain an award of costs following a CPRA lawsuit."  The trial court recognized that the union was the cause of much of the fee award, however, and noted that "in another context [the union] would have to bear that cost."

Filing a reverse-PRA suit, which is not permitted under and does not arise from the PRA, (*Marken*, *supra*, 202 Cal.App.4th at p. 1267), is such a context.  The trial court's determination that attorney fees against a third party were unavailable under Government Code section 6259, subdivision (d), following a PRA lawsuit was entirely consistent with a conclusion that such fees *are* available against a third party under section 1021.5 following a reverse-PRA action.[17]

_____

[17] Amici California News Publishers Association argues that requesters also should be permitted to recover fees from public agencies under section 1021.5 following a reverse-PRA action.  Because the Times has not appealed the trial court's determination that fees were unavailable against the City under section 1021.5, we do not address the issue here.

Thus, *Los Angeles Times v. Sheriff's Department* does not aid the PPOA here, as the trial court in this case correctly held.

2.      *Application of Joshua S., supra, 42 Cal.4th 945*

The trial court also found that the Times had satisfied all the statutory requirements of section 1021.5, which ordinarily mandates a fee award, but determined that *Joshua S.* precluded an award against the PPOA. *Joshua S.* is not applicable here, however.

*Joshua S, supra*, 42 Cal.4th 945. arose from an adoption dispute between a lesbian couple identified in the opinion only by their first names, Sharon and Annette. Sharon gave birth to two children through artificial insemination. When both children were born, Sharon and Annette were in a committed relationship. While retaining her parental rights, Sharon consented to Annette's adoption of the children. When Sharon and Annette later separated, Annette filed a motion for an order of adoption. Sharon moved for court approval to withdraw her consent to adopt. Sharon argued that the form of second parent adoption sought by Annette was unlawful. The California Supreme Court held that this form of second parent adoption was lawful. Annette subsequently moved for attorney fees pursuant to section 1021.5. Annette argued that she was entitled to the fees because she "had prevailed in the Supreme Court on the second parent adoption issue, an issue of benefit to a large class of persons." (*Joshua S., supra*, 42 Cal.4th at p. 950.) The trial court awarded attorney fees to Annette, but the Court of Appeal reversed.

Our Supreme Court noted "that the litigation here did yield a substantial and widespread public benefit." (*Joshua S., supra*, 42 Cal.4th at p. 952.) But the court concluded that "even when

21

an important right has been vindicated and a substantial public benefit conferred, and when a plaintiff's litigation has transcended her personal interest . . . section 1021.5 was not intended to impose fees on an individual seeking a judgment that determines only his or her private rights, but who has done nothing to adversely affect the public interest other than being on the losing side of an important appellate case." (*Id*. at p. 958.) The court found that Sharon "fits squarely into this category." (*Ibid*.) The court explained that Sharon was "a private litigant with no institutional interest in the litigation, and the judgment she sought in the present case would have settled only her private rights and those of her children and Annette. She simply raised an issue in the course of that litigation that gave rise to important appellate precedent decided adversely to her." (*Id*. at p. 957, fn. omitted.) "[S]ection 1021.5 attorney fees should not be imposed on parties such as [Sharon], an individual who has only engaged in litigation to adjudicate private rights from which important appellate precedent happens to emerge, but has otherwise done nothing to compromise the rights of the public or a significant class of people." (*Id*. at p. 954.)

In *Serrano*, *supra*, 52 Cal.4th 1018, the California Supreme Court explained the narrow scope of *Joshua S*., *supra*, 42 Cal.4th 945. (*Serrano*, at p. 1026.) The relevant *Serrano* facts are these: a court reporting service, Coast Court Reporters (Coast), charged the plaintiffs in a personal injury action an unreasonable fee for expediting a copy of a deposition noticed by the defendant. The plaintiffs asked the trial court to require Coast to provide the copy without the fee, but despite finding the fee unconscionable, the trial court believed it had no authority to determine how much a deposition reporter may charge. (*Id*. at pp. 1020–1021.)

The plaintiffs appealed and prevailed in a published Court of Appeal decision that established the trial court's jurisdiction to regulate such fees.[18]  The plaintiffs then sought fees under section 1021.5 for litigating their claim against the court reporting agency through the Court of Appeal.  Based in part on *Joshua S.,* however, both the trial court and the Court of Appeal denied an award, finding that the case was merely a " 'private business disagreement' " that " 'did not arise from an attempt to curtail any conduct on the part of Coast that was infringing a statutory or public right.' " (*Serrano, supra,* 52 Cal.4th at p. 1027.)

The Supreme Court granted review and reversed.  The court explained that *Joshua S.* had only "carved out a limited exception" to section 1021.5.  (*Serrano, supra,* 52 Cal.4th at p. 1026.)  Based on its independent review of the facts, the court held that the *Joshua S.* exception did not apply.  "While the proceedings in the trial court regarding transcript charges might be deemed a minor dispute limited to the circumstances of this litigation, on appeal Coast strenuously defended its institutional interest in controlling the fees charged to a nonnoticing party without judicial oversight." (*Serrano,* at p. 1027.)  "Accordingly, this is not a case in which a 'private litigant with no institutional interest in the litigation' pursued 'only [its] private rights.' " (*Ibid.,* quoting *Joshua S., supra,* 42 Cal.4th at p. 957.)  "Rather, we are presented with the usual circumstance where private attorney general fees are sought from a party 'at least partly responsible for the policy or practice that gave rise to the

---

[18] See *Serrano v. Stefan Merli Plastering Co., Inc.* (2008) 162 Cal.App.4th 1014, 1037.

litigation.'" (*Id*. at pp. 1027–1028, quoting *Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1181.)

In the instant case, the trial court did not discuss *Serrano* in its opinion. However, *Serrano* persuades us that *Joshua S.*'s narrow exception does not apply in this case. In seeking to obtain the OIR report from the City, which required opposing the PPOA's attempt to block the report's release, the Times' action directly affected public rather than private rights. Indeed, we explicitly recognized the nature of the suit in our prior opinion when we noted that: "The public's interest in disclosure is 'particularly great' where, as here, the underlying case involves an officer involved shootings and policies regarding public safety and law enforcement." (*Pasadena Police, supra*, 240 Cal.App.4th at p. 298.) Any redaction of such material, we held, would subvert the public's right to be kept fully informed of the activities of its peace officers in order to maintain trust in its police department. (*Ibid*.)

Instead of examining the Times' purpose in bringing the lawsuit, which plainly served the public interest, the trial court credited the motivations of the individual officers in opposing disclosure. Officers Newlin and Griffith were private litigants who sought to protect their privacy rights under the *Pitchess* statutes, the trial court noted, and did nothing to adversely affect the rights of the public. However, the power exercised by police officers, and their public visibility, naturally subjects them to public scrutiny and can render them public officials. (See *Kahn v. Bower* (1991) 232 Cal.App.3d 1599, 1611.)

Moreover, the subjective intent of the party seeking to prevent disclosure is immaterial. Although such a party must have "done something to compromise the rights of the public"

24

before having to pay attorney fees under section 1021.5, our Supreme Court refused to impose a "bad faith" requirement. (*Joshua S.*, *supra*, 42 Cal.4th at p. 958.) The court held only, "consistent with the language and evident intent of the statute, that the party against whom such fees are awarded must have done or failed to do something, in good faith or not, that compromised public rights." (*Ibid.*) Regardless of the officers' personal motivation in filing a reverse-PRA suit, in so doing, the officers and the PPOA plainly attempted to restrict the public's right of access to police records.

The officers and the PPOA claimed that the OIR report was a confidential personnel record entirely exempt from disclosure under the *Pitchess* statutes as well as the PRA's privilege exemption. In fact, they sought to expand the statutes' reach, inviting us to find that in addition to records generated in connection with employee advancement, appraisal, or discipline, the *Pitchess* statutes should be read to encompass records—like the entire OIR report—which contained information that theoretically " 'could be used' " for such purposes. (*Pasadena Police*, *supra*, 240 Cal.App.4th at p. 292.) As we already informed the parties in this case: "We may not and would not do so." (*Ibid.*)

The expansion sought by the officers and PPOA further justifies the imposition of attorney fees. In *Serrano*, *supra*, 52 Cal.4th 1018, for example, Coast strenuously defended its institutional interest in controlling the fees charged to a non-noticing party. (*Id.* at p. 1027.) Because the company had an institutional interest in the litigation, rather than a purely private interest, *Joshua S.* did not apply and a fee award could be imposed under section 1021.5. (*Serrano*, at pp. 1027, 1030.)

Here, as in *Serrano*, a litigant defended against a suit that sought to expand the government's power to curtail important public rights. (See *Joshua S., supra*, 42 Cal.4th at p. 957.) Therefore, attorney fees are not precluded by the narrow exception set out in *Joshua S.* (See *ibid.*; see also *County of San Luis Obispo v. Abalone Alliance* (1986) 178 Cal.App.3d 848, 866–869 [section 1021.5 fees awarded to protesters when suit by county and private parties to pay for damage would have chilled right to protest].)

Furthermore, the PPOA said it represented the interests of all its members, not just Officers Newlin and Griffith, in seeking to prevent the release of the OIR report. Indeed, the PPOA expressly stated its goal was to ensure that the confidential personnel information of peace officers remained confidential in the face of PRA requests and that its work in this case affected the confidential information of all peace officers. Thus, despite the trial court's determination to the contrary, the PPOA did not simply represent the two officers as private litigants—the union also acted on its own behalf. Indeed, a public employee union with a prominent role in governmental activity "has assumed the role of a public institution." (*Daniels v. Sanitarium Assn., Inc.* (1963) 59 Cal.2d 602, 608.) Although section 1021.5 was not intended to impose fees on an individual seeking a judgment that determined only his or her private rights (see *Joshua S., supra*, 42 Cal.4th at p. 958), here, a public organization sought a judgment that determined the rights of all its members.

Consequently, *Joshua S.*'s narrow limitation on the imposition of section 1021.5 fees is inapplicable here.[19]

Although the PPOA contends it merely sought to enforce the officers' private rights, even *Joshua S., supra*, 42 Cal.4th 945 noted that fees can be imposed "[w]hen a party initiates litigation that is determined to be detrimental to the public interest." (*Id.* at p. 957.) "Moreover, attorney fees have been awarded to those defending against suits by public entities, or those purporting to represent the public, that seek to expand the government's power to curtail important public rights." (*Ibid.*) In other words, even litigation that enforces important statutory rights—such as lawsuits involving the *Pitchess* statutes—can lead to fee-shifting against the unsuccessful plaintiff if the suit is determined to be adverse to the public interest. (See *Joshua S.*, at p. 957.)

In short, this case involves public officials and a public employee union pursuing litigation designed to expand the ability of police officers and a police department to withhold information from the public. The position taken by the officers and the PPOA is easily distinguishable from the private litigant in *Joshua S., supra*, 42 Cal.4th 945, who had no institutional interest in the litigation and who sought a judgment that would have settled only her private rights as well as those of her children and former domestic partner. (*Id.* at p. 957; see *Serrano, supra*, 52 Cal.4th at p. 1027 [*Joshua S.* did not apply when unsuccessful party "strenuously defended its institutional interest" throughout litigation].)

---

[19] Therefore, we need not address the Times' alternative argument that California Constitution article I, section 3(b) independently justifies reversal of the trial court's decision.

The cases cited by the PPOA are similarly inapposite. In *Azure Ltd. v. I-Flow Corp.* (2012) 207 Cal.App.4th 60, one business sued another for breach of fiduciary duty. (*Id.* at pp. 63–64.) The lawsuit resulted in a California Supreme Court decision bearing on the rights of all property owners whose property has been wrongfully transferred to the state by another private party. (*Id.* at p. 63.) Nevertheless, the Fourth District found, the underlying litigation still involved a private dispute and "merely advancing the state of the law does not transform a private dispute over substantial economic losses into a section 1021.5 case in which fees may be awarded to attorneys for serving the public interest as private attorneys general." (*Ibid.*) However, in denying fees, the Fourth District noted that the unsuccessful party had "no institutional interest in the litigation" and was not a "quasi-public agent in any sense" but instead "merely sought to avoid paying significant damages . . . in this particular case." (*Id.* at pp. 68–69.) In other words, this was a standard dispute among two private parties who "fought over who would be left holding the bag for losses that had already occurred." (*Id.* at p. 68.) Consequently, the case has no bearing on a suit involving public officials who sought to suppress an important public record, thus adversely affecting the public interest. (See *id.* at p. 69.)[20]

---

[20] *Save Our Heritage Organisation v. City of San Diego* (2017) 11 Cal.App.5th 154, is also inapt. There, the Fourth District declined to impose fees on a private, nonprofit organization that unsuccessfully challenged the City's approval of a development project. (*Id.* at pp. 157–158.) However, the court limited its holding to the circumstances of the case and refused to hold that "a court may never award 1021.5 attorney fees to a project proponent because such an award would defeat section

Because we are convinced *Joshua S.* is not applicable here, we hold the trial court's determination to the contrary was an abuse of discretion and that the Times is thus entitled to a fee award under section 1021.5. We therefore reverse the trial court's order denying the Times fees under section 1021.5 and remand the matter to the trial court with directions to award the Times reasonable fees against the officers and/or the PPOA for its work during all stages of this case, including the present appeal.

## II. Government Code section 6259, subdivision (d)

### A. STANDARD OF REVIEW

"California courts have long held that trial courts have broad discretion in determining the amount of a reasonable attorney's fee award. This determination is necessarily ad hoc and must be resolved on the particular circumstances of each case." (*Meister v. Regents of University of California* (1998) 67 Cal.App.4th 437, 452.) In exercising its discretion, the trial court may accordingly "consider all of the facts and the entire procedural history of the case in setting the amount of a reasonable attorney's fee award." (*Ibid.*) A fee award "'will not be overturned in the absence of a manifest abuse of discretion, a prejudicial error of law, or necessary findings not supported by substantial evidence.'" (*Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC* (2008) 162 Cal.App.4th 858, 894.)

The abuse of discretion standard includes a substantial evidence component: "We defer to the trial court's factual findings so long as they are supported by substantial evidence, and determine whether, under those facts, the court abused its

1021.5's purpose of encouraging public interest litigation." (*Id.* at p. 160.)

discretion.  If there is no evidence to support the court's findings, then an abuse of discretion has occurred." (*Tire Distributors, Inc. v. Cobrae* (2005) 132 Cal.App.4th 538, 544 (*Tire Distributors*).)

A court's ruling on the issue whether a plaintiff is a prevailing party under Government Code section 6259, subdivision (d)—the PRA—is a factual determination reviewed under the substantial evidence standard.  (*Galbiso v. Orosi Public Utility Dist.* (2008) 167 Cal.App.4th 1063, 1085 (*Galbiso*); see *Motorola Communication & Electronics, Inc. v. Department of General Services* (1997) 55 Cal.App.4th 1340, 1351.)  Numerous courts have applied this review standard to the issue whether a plaintiff's lawsuit caused the production of public records.  (See, e.g., *Motorola Communication*, at p. 1351; see also *Los Angeles Times v. Alameda Corridor Transp. Authority* (2001) 88 Cal.App.4th 1381, 1391 (*Los Angeles Times v. Alameda Corridor*).)  Courts have recognized that this causation question is an intensely factual and pragmatic one, frequently requiring courts to go outside the merits of the precise underlying dispute and focus on the condition that the fee claimant sought to change. (*Crawford v. Board of Education* (1988) 200 Cal.App.3d 1397, 1407.)  An appellate court must defer to the trial court's determinations on the causation issue, unless there is no evidence to support the trial court's factual conclusion.  (See *Tire Distributors, supra,* 132 Cal.App.4th at p. 544.)

B.    MERITS

1.    *Prevailing party determination*

The trial court held that the Times could recover fees against the City under the PRA for the work the Times performed in affirmatively enforcing its PRA requests.  However, because the Times spent the bulk of its time defending against

30

the PPOA's reverse-PRA suit, rather than affirmatively enforcing its PRA requests against the City, the trial court found that the Times was entitled to only a fraction of the fees it sought.

The PRA generally provides for inspection of public records maintained by state and local agencies. (*Pacific Merchant Shipping Assn. v. Board of Pilot Commissioners* (2015) 242 Cal.App.4th 1043, 1046.) Such "access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state." (Gov. Code, § 6250; *Filarsky v. Superior Court* (2002) 28 Cal.4th 419, 425–426 (*Filarsky*).) The PRA contains procedures to challenge a public agency's response to a records request, and provides that: "Any person may institute proceedings for injunctive or declarative relief or writ of mandate in any court of competent jurisdiction to enforce his or her right to inspect or to receive a copy of any public record" under the PRA. (Gov. Code, § 6258.)

A plaintiff prevailing in litigation under the PRA is entitled to reasonable attorney fees. (Gov. Code, § 6259, subd. (d).) This fee award "is mandatory if the plaintiff prevails." (*Filarsky*, *supra*, 28 Cal.4th at p. 427.) The PRA's fee award provision is designed to encourage members of the public to seek judicial enforcement of their right to inspect public records subject to disclosure. (See *Galbiso, supra,* 167 Cal.App.4th at p. 1088.) Litigation under the PRA is one of the rare instances where a losing party may still be deemed a prevailing party entitled to an attorney fee award. This is because the plaintiff has prevailed within the meaning of the PRA when he or she files an action that "results in defendant releasing a copy of a previously withheld document." (*Belth v. Garamendi* (1991) 232 Cal.App.3d 896, 898 (*Belth*).)

31

Thus, a plaintiff need not achieve a favorable final judgment to be a prevailing party in PRA litigation. A defendant's voluntary action in providing public records that is induced by plaintiff's lawsuit will still support an attorney fee award on the rationale that the lawsuit "'spurred defendant to act or was a catalyst speeding defendant's response.'" (*Belth, supra,* 232 Cal.App.3d at p. 901.) Additionally, if a plaintiff succeeds in obtaining only partial relief, the plaintiff is entitled to attorney fees unless the plaintiff obtains results "that are so minimal or insignificant as to justify a finding that the plaintiff did not [in fact] prevail." (*Los Angeles Times v. Alameda Corridor, supra,* 88 Cal.App.4th at pp. 1391–1392.)

Here, the trial court held that the Times was the prevailing party against the City only for the narrow matter of fees incurred during appellate mandamus review and subsequent trial court hearings regarding additional unredactions, and could recover reasonable attorney fees only as to this particular time period.[21] In finding that the Times prevailed against the City for this limited period only, the trial court determined that the City "took the correct position at trial." According to the trial court, the City adopted the appropriate legal standard regarding disclosure of

---

[21] The trial court then directed the Times and the City to meet and confer and file supplemental briefs to determine the amount of that award. The Times' supplemental brief expressly stated the Times was submitting its request solely in compliance with the court's order and reserved its right to appeal the order. The Times' notice of appeal also stated it was appealing the April 14th order, the May 17th order and "all other appealable rulings entered or embodies within those Orders." Thus, any claim that the Times has waived its right to appeal any portion of the trial court's orders is incorrect.

the OIR report and maintained its position on mandamus review, except it opposed additional unredactions for procedural reasons when the issue was raised by the Court of Appeal.

According to the Times, courts have consistently held that a requester who obtains a previously-withheld record has prevailed under the PRA—and is thus entitled to a fee award—even if the court determined that other records, or portions of records, were properly withheld. For example, in *Los Angeles Times v. Alameda Corridor*, *supra*, 88 Cal.App.4th 1381, the trial court held that the Times was not the prevailing party, principally because it did not obtain all the documents it sought. The Court of Appeal reversed, noting that cases denying attorney fees to a plaintiff under the PRA have done so because substantial evidence supported a finding that the litigation did not cause the defendant to disclose any of the documents ultimately made available. (*Id*. at p. 1391.) "In short, if a public record is disclosed only because a plaintiff filed a suit to obtain it, the plaintiff has prevailed." (*Ibid*.)

Notably, the Court of Appeal observed, "[n]othing in any case decided under the [PRA] supports the contention that a plaintiff who obtains only one of two documents sought has not prevailed within the meaning of the act. Other cases, without discussion, have awarded fees where disclosure is ordered for fewer than all of the documents sought." (*Los Angeles Times v. Alameda Corridor*, *supra*, 88 Cal.App.4th at p. 1391.) The Court of Appeal also flatly rejected the defendant's argument that it should look to other statutes for the definition of "prevailing party," such as the costs statute (Code Civ. Proc., § 1032) and case law interpreting the Federal Freedom of Information Act (FOIA). (*Id*. at p. 1391, fn. 9.) Under FOIA, the court has

discretion to withhold fees.  Even a plaintiff who has
" 'substantially prevailed' " and is thus eligible for fees will
receive an award only after the court balances a number of
factors, including among others the reasonableness of the
agency's withholding and the benefit to the public.  (*Ibid.*)  "That
is *not* the standard under the [PRA]," the Court of Appeal
observed.  (*Id*. at p. 1392, italics added.)

The Court of Appeal acknowledged the possibility that in
some cases a plaintiff might obtain documents that are so
minimal or insignificant as to justify a finding that it did not
prevail.  Absent such circumstances, however, fees and costs
should be awarded.  To do otherwise would be inconsistent with
the express purpose of the statute, "to broaden public access to
public records," and "would chill efforts to enforce the public right
to information."  (*Los Angeles Times v. Alameda Corridor*, *supra*,
88 Cal.App.4th at p. 1392.)

In *Los Angeles Times v. Alameda Corridor*, *supra*, 88
Cal.App.4th 1383, however, it was undisputed that the sought-
after document was disclosed only because the Times sued to
obtain it.  (See *id*. at p. 1391.)  Here, however, the Times did not
seek to compel release of the OIR report without the City's
proposed redactions until September 16, 2014—approximately
two weeks after the Slaughter parties first requested the report
under the PRA.  (See *Pasadena Police, supra*, 240 Cal.App.4th at
p. 277.)  While the Times' intervention undoubtedly led to the
subsequent disclosure of additional information contained within
the report, we cannot say that the report itself was disclosed only
because the Times sued to obtain it.  Arguably, it was the
Slaughter parties who initially spurred the City to act or who

34

served as a catalyst speeding the City's response. (See *Belth, supra,* 232 Cal.App.3d at p. 901.)

Nevertheless, as the Times notes, the trial court's conclusion that the City took the "correct position at trial" is in fact contrary to our prior opinion. As we explained, "a number of redactions proposed by the City and largely adopted by the trial court protected not privileged information relating to the officers, but information or findings critiquing conduct by or the policies and practice of the PPD itself." (*Pasadena Police, supra,* 240 Cal.App.4th at p. 298.) Redacting this material, we found, would have subverted the public's right to be kept fully informed of police activities, which is necessary to maintain trust in a police department. (See *ibid*.) The inappropriately redacted material "include[d] analyses of the PPD's administrative investigation and departmental policies, descriptions of the PPD's responsiveness" (or lack thereof), and the OIR's recommendations, "none of which [was] privileged under the PRA." (*Id*. at p. 274.)

"However, a PRA plaintiff does not qualify as a prevailing party merely because the defendant disclosed records sometime after the PRA action was filed." (*Sukumar v. City of San Diego* (2017) 14 Cal.App.5th 451, 464 (*Sukumar*).) "There must be more than a mere temporal connection between the filing of litigation to compel production of records under the PRA and the production of those records. The litigation must have been the motivating factor for the production of documents. [Citations.] The key is whether there is a substantial causal relationship between the lawsuit and the delivery of the information." (*Ibid*.)

Although the Times cites *Sukumar* in support of its argument here, the case is distinguishable. In *Sukumar, supra,*

14 Cal.App.5th 451, a single requester sought records from the city. After receiving several batches of records, Sukumar continued to ask the city if additional material would be forthcoming. Although the city repeatedly assured Sukumar that it had fully responded to his records request, it subsequently produced an additional five photographs and 146 pages of emails as a result of court-ordered depositions in the case. (See *id.* at pp. 454–461.) The Fourth District reversed the trial court's finding that Sukumar was not a prevailing party under Government Code section 6259, subdivision (d), holding that the litigation led to the release of additional responsive and material documents. (*Id.* at pp. 464–465.) "[B]ut for Sukumar's persistent demand for discovery and the court-ordered depositions that resulted from those efforts, the City would not have produced any of the above-mentioned responsive documents." (*Id.* at p. 465.) The Fourth District remanded the case so the trial court could determine the amount of reasonable attorney fees. (*Id.* at p. 468.) Thus, we have no published record as to whether Sukumar received the full amount of fees he sought. More importantly, Sukumar was the *only* requester in that case. Consequently, when determining causation, there was no need to establish which action by Sukumar prompted the city's compliance—it was enough that the litigation itself resulted in the release of records that would not otherwise have been released. (*Id.* at p. 464.)

Here, there is clearly a "substantial causal relationship" between the Times' intervention and the City's release of an additional 126 lines of the OIR report—about five of the 14 previously redacted pages. (*Sukumar*, *supra*, 14 Cal.App.5th at p. 464.) But there is no such relationship between the Times' intervention and the City's initial decision to release (an overly

36

redacted version) of the report.  Nor can there be, given the chronology of this case.

The Times is correct that the "unredaction issue" is simply another way of characterizing the single overarching question in the entire litigation—namely, what portions of the OIR report, if any, were exempt from disclosure under the PRA given the scope of the *Pitchess* statutes?  The Times focused on this issue throughout the litigation, both in enforcing its own PRA petition against the City and in opposing the PPOA's reverse-PRA action.  We agree that the Times' advocacy helped shape our prior opinion.  But the overlapping nature of the Times' substantive legal arguments against both the City and the PPOA does not aid its argument here.  The PRA only allows for recovery from the City.[22]  Thus, the trial court was tasked with determining what portion of the Times' work was spent battling that entity alone.  The trial court found that the Times was the prevailing party against the City only for the narrow matter of fees incurred during appellate mandamus review and the subsequent hearings over additional unredactions.  If there is *no* evidence to support a

---

[22] The Times' reliance on *Thompson Pacific Const., Inc. v. City of Sunnyvale* (2007) 155 Cal.App.4th 525 is misplaced.  There, the Sixth District held that allocation of  fees is not required when the issues are " 'so interrelated that it would have been impossible to separate them into claims for which attorney fees are properly awarded and claims for which they are not.' "  (*Id*. at p. 555.)  But *Thompson* involved multiple issues, not multiple defendants.  Although the plaintiff's legal work could not be so easily parsed in *Thompson*, the same cannot be said here.  (See *Sweeney v. McClaran* (1976) 58 Cal.App.3d 824, 830 [fees for work related to interpleader claim clearly separable temporally from fees incurred before claim was added].)

trial court's findings, then an abuse of discretion has occurred. (*Tire Distributors, supra,* 132 Cal.App.4th at p. 544.) We cannot say an abuse of discretion occurred here.

### 2. *Award reduction*

Pursuant to the trial court's order, the Times identified the fees it had incurred during appellate mandamus review as well as the subsequent trial court hearings on additional unredactions—less any fees incurred for duplicative work by counsel for the Times and the Slaughter parties. The Times submitted records indicating that its counsel billed $50,163 for time spent addressing the unredaction issue in the Court of Appeal and billed $10,781 for the post-remand unredaction issues. The Times also sought an additional $5,760 in fees for the court-ordered meet and confer and supplemental briefing.

The trial court noted that "the Slaughter [parties] raised the unredaction issue and both the L.A. Times and Slaughter [parties] filed separate letter briefs, and separately appeared at oral arguments, overlapping on multiple arguments." Indeed, the Times conceded that at least two arguments were duplicative. Thus, the trial court held, a 50 percent reduction for duplicative attorney efforts was appropriate.[23]

The Times contends that the trial court erred in reducing its fee award based on "an artificial distinction" between arguments by the Times in opposing PPOA's reverse-PRA action and arguments made to affirmatively enforce the PRA requests it had lodged with the City. As discussed above, we do not believe the trial court erred in this respect. The Times could not rely on

---

[23] The trial court also declined to award the Times additional fees for its supplemental briefing during the meet and confer process.

the City to oppose the PPOA's efforts to bar access to the OIR report.  As a result, the Times unavoidably incurred fees against both entities.  But while this circumstance justifies a fee award under section 1021.5 and the PRA, it has nothing to do with the duplicative efforts by the Times and the Slaughter parties.

Admittedly, the Times could not more precisely tailor its arguments during the proceedings, which might have prevented potentially duplicative efforts, given that the Times did not have access to the withheld portions of the OIR report.  (See *Pasadena Police*, *supra*, 240 Cal.App.4th at p. 296.)  However, based on the broad discretion afforded trial courts under these circumstances, (see, e.g., *Graciano v. Robinson* Ford Sales, Inc. (2006) 144 Cal.App.4th 140, 161), we cannot say that the trial court abused its discretion in its fee allocation.

## DISPOSITION

The order is affirmed in part and reversed in part with directions.  We affirm the trial court's order awarding limited fees under the PRA (Gov. Code, § 6259, subd. (d)).  We reverse the trial court's order awarding no fees under the private attorney general statute (Code Civ. Proc., § 1021.5).  The trial court is directed to award the Los Angeles Times Communications, LLC, reasonable fees under Code of Civil Procedure section 1021.5 against the officers Griffin and Newlen and/or the Pasadena Police Officers Association.  The parties are to bear their own costs on appeal.

CERTIFIED FOR PUBLICATION.


JOHNSON, J.


We concur:


ROTHSCHILD, P. J.


CHANEY, J.